THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SOMERSET COMMUNICATIONS
GROUP, LLC,

              Plaintiff,

    v.

WALL TO WALL ADVERTISING,
INC., *et. al.*,

              Defendants.

CASE NO. C13-2084-JCC

ORDER

This matter comes before the Court on Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (Dkt. No. 15.) Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS IN PART and DENIES IN PART the motion for the reasons explained herein.

I.    **<u>BACKGROUND</u>**

Plaintiff Somerset Communications Group, LLC ("Somerset") sues Defendants Wall to Wall Advertising, Inc. ("W2W"), Donald and Andrea MacCord, Shannon and Tracey Doyle, S.D. Doyle, Ltd., and Fourpoints Holding, LLC ("FPH") for securities fraud in connection with the purchase of shares of FPH. (Dkt. No. 1.) FPH was formed by W2W, Lubin Outdoor, LLC ("Lubin"), and Fourpoints Investors ("FP Investors") for the purpose of holding and operating

1   Fourpoints Communications, LLC ("FPC"), a company that sold and operated digital billboards
2   on Native American Trust lands. (*Id*. at ¶ 3.2–3.3.) Donald MacCord ("MacCord") was the sole
3   shareholder and President of W2W, and the Chief Executive Officer of FPH. (*Id*. at ¶ 1.3.)
4   Shannon Doyle ("Doyle") was the Chief Financial Officer of FPH. The complaint alleges that
5   FPH was initially funded through a $5.5 million capital investment by FP Investors, a $1.5
6   million investment by W2W, and a $1.1 million investment from Lubin, with the promise of an
7   additional $6.5 million investment from FP Investors. (*Id*. at ¶ 3.4.) Under FPH's operating
8   agreement, all manager members were required to consent to the sale of any units of stock. (*Id*. at
9   ¶ 3.21.)
10          In May or June of 2009, MacCord allegedly approached William Moore, the owner of
11   Somerset, with an offer to purchase a minimum of a five percent stake in FPH for $2 million. (*Id*.
12   at ¶ 3.8.) The complaint states that over the next six months, MacCord and Doyle aggressively
13   courted Moore to consummate the purchase of the stock. During this time, MacCord and Doyle
14   allegedly made numerous statements to Moore and sent him five different documents detailing
15   FPH's business plans and financial status. (*Id*. at ¶¶ 3.10, 3.11, 3.14, 3.15, 3.17.) Each of these
16   documents, Plaintiff alleges, indicated that FPC had a strong income stream and plans for
17   aggressive expansion. (*Id*.) Specifically, these documents allegedly indicated that FPC had
18   ongoing and expected revenue from two signs in California and that FP Investors would be
19   investing an additional $6 million. (*Id*. at ¶¶ 3.9, 3.10.6.) According to the Complaint, neither of
20   these statements were true: The California signs were either "terminated" or "turned off" before
21   June 2009 (*Id*. at ¶¶ 3.9, 3.14, 3.15), at which point FP Investors allegedly withdrew the loan
22   commitment and ordered MacCord to sell FPH. (*Id*. at ¶ 3.10.6.) Plaintiff further alleges that
23   MacCord and Doyle failed to mention in any of their communications that FPH was
24   "functionally insolvent" by falsely stating revenue figures and that FP Investors had pulled its
25   continued funding. (*Id*. at ¶¶ 3.11, 3.11.4.)
26   //

1    In November 2009, Moore formed Somerset with the intent of using it to purchase shares

2    of FPH from W2W. (*Id.* at ¶ 3.19.) The month before, MacCord and Doyle allegedly represented

3    to Moore that MacCord wished to sell W2W's shares to secure operational capital for three other

4    ventures to be operated under a separate company. In reality, the Complaint alleges, MacCord

5    and Doyle sought and ultimately used Somerset's investment to keep FPH afloat given its

6    pending undisclosed financial woes. (*Id.* at ¶ 3.18.) Between December 2009 and August 2010,

7    Somerset made nineteen purchases of FPH stock from W2W, investing $2,028,000 in return for

8    a 5.5 percent stake in the company. (*Id.* at ¶ 3.26.) The Complaint states that MacCord and Doyle

9    informed Somerset that the other managing partners, Lubin and FP Investors, had consented to

10   the sale as required by FPH's operating agreement. (*Id.* at ¶ 3.21–22.) However, neither was

11   informed of the sale, the Complaint alleges, and either MacCord or Doyle allegedly forged the

12   consent forms for each sale of stock. (*Id.* at ¶ 3.21–22, 3.30.) MacCord and Doyle then allegedly

13   used Somerset's investment to pay FPC's operating expenses and interest payments on a loan

14   from FP Investors without informing Somerset. (*Id.* at ¶ 3.31.) Somerset did not learn of FPC's

15   financial troubles until it was informed that MacCord and Doyle had been terminated in

16   November 2010. (*Id.* at ¶ 3.34.) Shortly afterwards, Somerset learned that the consent forms had

17   been forged and that FPH believed Somerset to have no membership interest in the company.

18   (*Id.* at ¶ 3.35.)

19   Somerset now brings six claims for securities fraud under federal and state law for the

20   misrepresentations and omissions MacCord and Doyle made before and during the investment

21   process.[1] (Dkt. No. 1, § IV.) Specifically, Somerset claims Defendants (1) "falsely represented

22   assets and revenues of FPH[,]" including the "Pala Indian Tribe" deal and inflated accounts

23   receivable (*Id.* at ¶ 4.3); (2) fraudulently omitted the fact that FPH was "essentially insolvent" on

24

25

26   [1] Somerset also brings a claim for agency alleging that MacCord and Doyle were agents acting on behalf of FPH and S.D. Doyle. Because neither party disputes that MacCord and Doyle were acting in an agency capacity, this issue will not be analyzed in further depth.

ORDER
PAGE - 3

1   repeated occasions (*Id*. at ¶ 4.10); (3) fraudulently omitted that FP Investors had "withdrawn its

2   commitment to fund FPH and directed MacCord to sell" after the Pala Indian Tribe deal fell

3   through (*Id*. at ¶ 4.16); (4) fraudulently omitted that Lubin "was reducing its interest in FPH by

4   selling its common units to MacCord and W2W at a price lower than that offered to Somerset"

5   (*Id*. at ¶ 4.22); (5) fraudulently omitted that "FPH had defaulted on its interest payment to FP

6   Investors" (*Id*. at 4.28); and (6) forged FP Investors' and Lubin's signatures on consent forms for

7   the sale of units to Somerset. (*Id*. at ¶ 4.34.)

8          Defendants now move to dismiss Somerset's claims. Defendants argue that Somerset

9   fails to plead sufficient facts as to materiality, scienter, and causation to meet the heightened

10  standard for securities fraud, and fails to plead sufficient facts to implicate MacCord's and

11  Doyle's respective marital communities.[2] (Dkt. No. 15.) For the reasons below, although the

12  Court agrees with Defendants that Somerset has failed to plead sufficient facts under federal law

13  for claims one through five, Somerset has met its burden as to claim six. Additionally, Somerset

14  has pled sufficient facts for claims three and six under Washington state law.

15  **II.    DISCUSSION**

16         **A.      Legal Standard**

17         A party may move to dismiss a complaint for failure to state a claim upon which relief

18  can be granted. FED. R. CIV. P. 12(b)(6). To withstand a Rule 12(b)(6) motion to dismiss, a

19  complaint must "provide more than a formulaic recitation of the elements of a cause of action,

20  and must assert facts that 'raise a right to relief above the speculative level.'" *Lyons v.*

21  *Homecomings Fin. LLC*, 770 F. Supp. 2d 1163, 1166 (W.D. Wash. 2011) (quoting *Bell Atlantic*

22  *Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). When considering a Rule 12(b)(6) motion, the

23

24

25         [2] Somerset's complaint cites three categories of law that the alleged misrepresentations and omissions
    violate: § 17(a) of the Securities Act of 1933, § 10(b)–5, and the Washington Securities Act. The Court grants
    Defendants' motion to dismiss all claims insofar as they are based on § 17(a) because the Ninth Circuit has

26  expressly held that no private right of action exists under this statute. *In re Washington Pub. Power Supply Sys. Sec.*
    *Litig.*, 823 F.2d 1349, 1358 (9th Cir. 1987).

ORDER
PAGE - 4

court must take "all well-pleaded factual allegations as true and to draw all reasonable inferences therefrom in favor of the plaintiff." *Wyler Summit P'ship v. Turner Broadcasting Sys., Inc.*, 135 F.3d 658, 663 (9th Cir. 1998). A court is not required to accept as true, however, "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences*." In re Gilead Sciences Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

In addition to the aforementioned "plausibility" standard, a complaint raising Rule 10b–5 fraud claims must also satisfy the "particularity" requirement of Federal Rule of Civil Procedure 9(b) and the heightened pleading requirements of the Private Securities Litigation Reform Act ("PSLRA"). *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011); *WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.*, 655 F.3d 1039, 1047 (9th Cir. 2011). Under Rule 9(b), a complaint pleading fraud must "state with particularity the circumstances constituting fraud or mistake." *Capitol W. Appraisals, LLC v. Countrywide Fin. Corp.*, 759 F. Supp. 2d 1267, 1271 (W.D. Wash. 2010) (citing *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)). This requirement is best understood as requiring a plaintiff to identify the "who, what, when, where, and how of the misconduct charged." *Id.* (internal quotations omitted). Additionally, the PSLRA requires that a securities fraud plaintiff "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, . . . all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1)(B); *see Reese*, 643 F.3d at 690.

### B.    Federal Securities Law Claims

Section 10(b) of the 1934 Act makes it unlawful "for any person, directly or indirectly, . . . . [t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe." 15 U.S.C. §§ 78j, 78j(b). Rule 10b–5, promulgated under § 10(b), in turn provides: "It shall be unlawful for any person . . . [t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in

1   the light of the circumstances under which they were made, not misleading." *Livid Holdings Ltd.*

2   *v. Salomon Smith Barney*, *Inc.*, 416 F.3d 940, 946 (9th Cir. 2005) (citing 17 C.F.R. § 240.10b–5).

3   In order to state a claim under Rule 10b–5, a plaintiff must plead: "(1) a material

4   misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the

5   misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the

6   misrepresentation or omission; (5) economic loss; and (6) loss causation."[3] *WPP Luxembourg*,

7   655 F.3d at 1048. Defendants here assert that Plaintiff's complaint fails to adequately plead

8   materiality, scienter, and loss causation. The Court addresses each in turn.

9           **1.   Materiality**

10         A misrepresentation or omission is material if there is "a substantial likelihood that the

11   disclosure of the omitted fact would have been viewed by the reasonable investor as having

12   significantly altered the 'total mix' of information made available." *Reese v. Malone*, --- F.3d ---,

13   2014 WL 555911 at *6 (9th Cir. 2014) (citing *Basic Inc. v. Levinson,* 485 U.S. 224, 231–232

14   (1988)). "Although determining materiality in securities fraud cases should ordinarily be left to

15   the trier of fact, conclusory allegations of law and unwarranted inferences are insufficient to

16   defeat a motion to dismiss for failure to state a claim." *In re Cutera Sec. Litig.*, 610 F.3d 1103,

17   1108 (9th Cir. 2010). To plead materiality and falsity, Somerset "must (1) specify each allegedly

18   misleading statement or omission, (2) explain why the statement is misleading, and (3) if the

19   _____

20       [3] A defendant is liable for the omission of material information under Rule 10b–5(b) if he or she has a duty
to disclose that information. *WPP Luxembourg*, 655 F.3d at 1048 (citing *Chiarella v. United States,* 445 U.S. 222,

21   235 (1980)). In general, "parties to an impersonal market transaction owe no duty of disclosure to one another
absent a fiduciary or agency relationship, prior dealings, or circumstances such that one party has placed trust and

22   confidence in the other." *Paracor Fin. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1157 (9th Cir. 1996). "A number
of factors are used to determine whether a party has a duty to disclose: (1) the relationship of the parties, (2) their

23   relative access to information, (3) the benefit that the defendant derives from the relationship, (4) the defendant's
awareness that the plaintiff was relying upon the relationship in making his investment decision, and (5) the

24   defendant's activity in initiating the transaction." *Id.* Here, Defendants do not dispute that MacCord and Doyle had a
duty to disclose the allegedly omitted information. Nonetheless, the Court notes that the close relationship between

25   MacCord and Moore (Dkt. No. 1 at 3.10.2), Defendants' superior access to information, Defendants' knowledge that
Moore was relying on their statements about the health of the company, and the benefit Defendants derived from the

26   relationship created a duty to disclose. *See WPP Luxembourg*, 655 F.3d at 1049.

allegation 'regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.'" *Id*. at 1109 (quoting 15 U.S.C. § 78u–4(b)(1)(B)).

Somerset has sufficiently pled materiality as to claims three and six. In claim three, Somerset argues that Defendants committed securities fraud by failing to disclose that FP Investors had withdrawn its loan commitment to FPH of approximately $6.5 million and ordered MacCord to sell the company after the Pala Indian Tribe deal collapsed in or before June 2009. (Dkt. No. 1 at ¶ 4.17.) Although Somerset did not specify what percentage of ownership or control FP Investors had in FPH, it is a reasonable inference that the party who provided a $5.5 million capital investment (out of an initial $8.1 million round) and a subsequent $6.5 million loan commitment would have a controlling interest in the company and significant power to compel the CEO to sell the company. A reasonable investor would certainly consider the loss of a significant portion of a company's promised investment and an order to sell the company from a major investor when evaluating the purchase of shares. *See*, *e.g., Livid Holdings*, 416 F.3d at 947 (finding that learning a company had substantially less cash than it had been led to believe material). Similarly, in claim six, Somerset argues that Defendants committed securities fraud by forging the signatures of Lubin and FP Investors on the consent forms required to transfer shares to Somerset. (Dkt. No. 1 at ¶ 4.34.) Somerset adequately pleads materiality because its purchase of stock was meant to obtain a 5% ownership stake in FPH, and the forged consent forms allegedly prevented him from obtaining any value from his $2 million investment. (Dkt. No. 1 at ¶¶ 3.26, 3.30.)

On the other hand, Somerset has failed to plead materiality or falsity with sufficient particularity for the statements in claims one, two, four, and five. In claim one, Somerset argues that Defendants committed securities fraud by misrepresenting FPH's "assets and revenue" while soliciting Moore to purchase units of stock. (Dkt. No. 1 at ¶ 4.3.) More specifically, Somerset alleges that Defendants' repeated statements that FPH had $400,000 in monthly revenue (*Id*. at ¶

3.10.3), that the Pala Indian Tribe signs had projected revenue of approximately $4 million (*Id.* at ¶ 3.14), and that the two signs were operational in California (*Id*. at ¶ 3.11.3) were false. However, Somerset has failed to plead with specificity what percentage of FPC's total or expected income the California signs represented, how far $400,000 was from FPC's actual revenue, or whether FPH still expected revenue from the California signs even if they had been "turned off" or "terminated." Without knowing how the California signs or the $400,000 in revenue fit into the FPH's overall financial health or total portfolio of operational signs—beyond the vague conclusion that the company financial health "depended" on that one deal—these allegations are insufficient for the heightened pleading standard under the PSLRA. When it amends its complaint, Somerset must affirmatively specify the misleading statements or omissions, *the reason or reasons* why that statement or omission was misleading, and how it knows that the information was misleading. *See* 15 U.S.C. § 78u–4(b)(1)(B).

In claim two, Somerset alleges that Defendants failed to disclose that the company was insolvent before and during the solicitation of Moore to purchase units of stock. (Dkt. No. 1 at ¶ 4.11.) This claim is supported in part by Somerset's more detailed allegations regarding the fact that FPH allegedly defaulted on an interest payment to FP Investors in April 2010 and that FPH was unable to pay MacCord and Doyle their salaries after June 2010. The problem, however, is that Somerset had already invested nearly three-quarters of the $2 million *before* FPH missed this interest payment and became unable to pay the salaries. The only other allegations regarding insolvency before the initial investments were made or during the first rounds (*i.e.*, through April and June 2010) are the numerous conclusory assertions that when MacCord and Doyle first contacted Moore about investing in FPH, the company had "insufficient working capital" and that existing revenue was insufficient to continue operations. With regard to the such assertions, the complaint fails to allege what its actual assets and liabilities were or how Plaintiff otherwise reached this conclusion. Ultimately, the Court finds that while a company's insolvency would certainly be material if adequately alleged, Somerset's complaint does not provide sufficiently

1   detailed factual allegations to demonstrate that FPH was indeed insolvent before or during most

2   of Somerset's investments.

3           In claim four, Somerset complains that Defendants failed to disclose that Lubin was

4   reducing its interest in FPH by selling its units to W2W, and that W2W purchased those units at

5   a lower price than it offered Somerset. (Dkt. No. 1 at ¶ 4.23.) However, Somerset failed to plead

6   any other facts about this allegation, including why Lubin chose to reduce its interest, how many

7   units of stock Lubin sold to W2W, or the difference in price between the two sales. Without

8   these or other additional facts, the Court cannot determine whether this information would have

9   "significantly altered the 'total mix' of information" available to Somerset. *See Reese*, 2014 WL

10  555911 at *6 (holding that a company's concealment that it ignored warning signs about

11  environmental issues material to investors).

12          Somerset similarly fails to plead sufficient facts in support of claim five. In that claim,

13  Somerset alleges that that Defendants failed to disclose that FPH defaulted on a loan interest

14  payment to FP Investors. (Dkt. No. 1 at ¶ 4.29.) However, Somerset again fails to explain the

15  size of this payment and default or any details about its outstanding obligations to FP Investors.

16  Nor does Somerset detail how it came to know such information. By failing to plead such facts

17  or information, the Court cannot determine whether this information would have "significantly

18  altered the 'total mix' of information" available to Somerset, or whether it would have caused a

19  reasonable investor to act differently had it been disclosed. *See Reese*, 2014 WL 555911 at *6.

20  Accordingly, claims one, two, four, and five are dismissed without prejudice for failing to

21  sufficiently plead materiality and falsity. Plaintiff will be granted leave to amend its claims so as

22  to conform with the PSLRA's heightened pleading requirement.

23          **2.   Scienter**

24          In order to satisfy the heightened pleading standard under the PSLRA, a plaintiff must

25  plead with particularity facts giving rise to a "strong inference" of fraudulent intent. *See* 15

26  U.S.C. § 78u-4(b)(2)(A). To qualify as a "strong inference," an inference must be "more than

1    merely plausible or reasonable—it must be cogent and at least as compelling as any opposing

2    inference of nonfraudulent intent." *WPP Luxembourg*, 655 F.3d at 1051–52 (citing *Tellabs, Inc.*

3    *v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007)). "Under *Tellabs* and Ninth Circuit

4    law, [the Court] conducts a two-part inquiry for scienter: first, [it] determine[s] whether any of

5    the allegations, standing alone, are sufficient to create a strong inference of scienter; second, if

6    no individual allegation is sufficient, [the Court] conduct[s] a 'holistic' review of the same

7    allegations to determine whether the insufficient allegations combine to create a strong inference

8    of intentional conduct or deliberate recklessness." *New Mexico State Inv. Council v. Ernst &*

9    *Young LLP*, 641 F.3d 1089, 1095 (9th Cir. 2011).[4]

10          Somerset has pled scienter with sufficient particularity for the remaining two claims.

11   Somerset has pled sufficient facts to meet the first prong of *Tellabs* for claim six, the forging of

12   consent forms, because the Court cannot discern any plausible, non-fraudulent reason for

13   MacCord and Doyle to have provided Moore consent forms they claimed were "signed" by

14   Lubin and FP Investors for each of the nineteen times Moore purchased stock. Somerset has also

15   sufficiently pled scienter under the second prong for claim three. First, the complaint alleges that

16   the Defendants knew that FP Investors had withdrawn funding and ordered MacCord to sell the

17   company, and that the information they were sharing was materially false when they made the

18   misstatements or omissions. *See*, *e.g.*, *Livid Holdings*, 416 F.3d at 948 (complaint alleged

19   sufficient scienter when "the Defendants knew the contested statement's most obvious

20   ────────────────

21          [4] As a threshold matter, the Court agrees with Defendants that statements vaguely referencing potential

22   expansion and future revenue in the Complaint are protected by the "safe harbor" provision in 15 U.S.C. § 78u–
     5(i)(1)(A). (Dkt. No. 1 at ¶¶ 3.10.1, 3.10.4, 3.10.5, 3.11.1, 3.11.2, 3.11.4, and 3.16.)  The safe harbor provision

23   protects "a statement containing a projection of revenues, income (including income loss), earnings (including
     earnings loss) per share, capital expenditures, dividends, capital structure, or other financial items." *In re Cutera*

24   *Sec. Litig.*, 610 F.3d at 1111. The safe harbor provision does not protect, however, such statements if they are made
     with actual knowledge that the statement was false or misleading. 15 U.S.C. § 78u–5(c)(1). Somerset has failed to

25   plead sufficient facts that show that MacCord and Doyle actually knew each of the forward-looking statements made
     were false because the only statements provided by Somerset are unsupported, conclusory statements, which are

26   insufficient to meet the heightened pleading standard required. *See In re Cutera Sec. Litig.*, 610 F.3d at 1112
     (investor's complaint lacked specificity because it provided only "conclusory allegations."); (*See, e.g.*, Dkt. No. 1 at
     ¶ 3.11.1 "falsely represented assets and revenues" and "inflated accounts receivable").

1   interpretation was false when made."); (Dkt. No. 1 at ¶¶ 3.9, 3.12, 3.14, 3.16, 3.24, 4.11, 4.17).

2   Second, the complaint as a whole, Defendants' roles as the leading corporate executives of FPH,

3   the amount of allegedly misleading and false statements provided, and the alleged motive for

4   deceit—the company's financial struggles and lost funding—persuades the Court that the

5   inference of fraudulent intent—or at a minimum, deliberate recklessness—is at least as

6   compelling an inference as any non-fraudulent explanation. *See WPP Luxembourg*, 655 F.3d at

7   1053.

8         The Court declines to analyze in depth the scienter allegations for the remaining claims,

9   given the Court's materiality analysis herein. In essence, if Plaintiff's amended complaint

10  adequately pleads that the misrepresentations and omissions were material, the Court would

11  likely be satisfied that scienter would also be demonstrated by virtue of MacCord's and Doyle's

12  positions within the company, their direct role in courting Moore to invest, and their alleged

13  actual knowledge of the falsity and materiality of the statements. Conversely, the Court would be

14  hard pressed to conclude that Defendants acted with fraudulent intent or deliberate recklessness

15  if they failed to disclose immaterial facts or otherwise unsupported, vague conclusions. Plaintiff

16  should consider this approach when it files an amended complaint.

17              **3.   Causation**

18        "The causation requirement for Rule 10b–5 actions includes 'both transaction causation,

19  that the violations in question caused the plaintiff to engage in the transaction, and loss

20  causation, that the misrepresentation or omissions caused the harm.'" *Livid Holdings*, 416 F.3d at

21  949 (citing *Binder v. Gillespie*, 184 F.3d 1059, 1063 (9th Cir. 1999)). To plead loss causation, a

22  plaintiff must make "particular allegations as to 'what the relevant economic loss might be,' and

23  'what the causal connection might be' between the fraud alleged and the economic losses

24  actually suffered." *In re Gilead Sciences Sec. Litig.*, 536 F.3d at 1056 (quoting *Dura Pharm.,

25  Inc. v. Broudo*, 544 U.S. 336, 347 (2005)). The misrepresentation "need not be the sole reason

26  for the decline in value of the securities, but it must be a "substantial cause." *In re Gilead*

1    *Sciences Sec. Litig.*, 536 F.3d at 1055 (internal quotations omitted). Several circuit courts have

2    expressed disapproval at dismissing a securities action based upon lack of causation on a

3    12(b)(6) motion, *see id.* at 1057 (citing to Second and Third Circuit opinions holding that

4    resolving causation is inappropriate at the motion to dismiss stage), but the Supreme Court has

5    held that a complaint must, at a minimum, "provide a defendant with some indication of the loss

6    and the causal connection that the plaintiff has in mind." *Dura Pharm*, 544 U.S. at 347.

7         Somerset has met its burden as to transaction and loss causation for the alleged forgery

8    because it pled that Moore believed he was purchasing an interest in FPH, and the forged consent

9    forms directly caused the loss of his investment in FPH. *See, e.g., Livid Holdings*, 416 F.3d at

10   949 (loss causation adequately pled when the content of the alleged misstatements caused the

11   harm actually suffered by the plaintiff).  Although Somerset has pled loss causation with

12   sufficient particularity for claim six, it has failed do so for all of the remaining claims. Somerset

13   failed to plead any statements relating to how the false statements and/or omissions about FPH's

14   revenue and assets (claim one), FPH's alleged insolvency (claim two), the withdrawal of FI

15   Investors' support (claim three), Lubin's stock sale (claim four), or the default on the interest

16   payment to FP Investors (claim five) affected its decision to purchase stock or caused the loss it

17   suffered. For example, in claim two, Somerset fails to even plead that it relied upon the

18   statements made concealing FPH's alleged insolvency, that that reliance caused it to continue

19   investing or pay an otherwise inflated purchase price, or that the insolvency caused any specific

20   harm at all. *Compare* (Dkt. No. 1 at ¶¶ 4.10–4.15) *with Carlucci v. Han,* 907 F. Supp. 2d 709,

21   726 (E.D. Va. 2012) (loss causation sufficiently pled when plaintiff alleged that defendant's

22   repeated misstatements induced him to invest and that plaintiff's reliance on these statements

23   was the proximate cause of his injury). Somerset also makes this same mistake for the other four

24   claims. (*See* Dkt. No. 1 at ¶¶ 4.2–4.40.)

25        To adequately plead causation, the complaint must, at a minimum, include some

26   allegation that Somerset would not have engaged in the transaction but for the misstatements and

1    omissions, or that these misrepresentations and omissions actually caused some related loss. *See*,

2    *e.g.*, *Brown v. Earthboard Sports USA*, 481 F.3d 901, 920 (6th Cir. 2007) (noting that "a small

3    private offering is far more subject than shares trading on large public markets to initial purchase

4    prices that are inflated fraudulently."). Without some statements explaining the nature of the loss

5    suffered by Somerset and how that loss is causally linked to these statements (rather than the fact

6    that it did not actually receive any shares in FPH after investing), this Court cannot sustain the

7    remaining claims. *Cf. Livid Holdings*, 416 F.3d at 949 (finding that shareholders sufficiently pled

8    causation because they "alleged both that they would not have purchased the PCI stock but for

9    the misrepresentation and that the Defendants' misrepresentation was directly related to the

10   actual economic loss it suffered"); *Red River Res., Inc. v. Mariner Sys., Inc*., No. C11-02589,

11   2012 WL 2507517 at *7 (D. Ariz. June 29, 2012) (loss causation met when plaintiff stated it

12   would not have invested had it known the opportunity was artificially inflated due to defendant's

13   misstatements). Although it is clear that the alleged forgery caused Somerset to lose any value its

14   investment may have had because it allegedly prevented Somerset from obtaining an ownership

15   interest in FPH, the complaint is silent as to how the misstatement in claim one, or the omissions

16   in claims two, three, four and five caused any specific, quantifiable harm to Somerset.

17         **C.      State Law Claims**

18         The Court next turns to Plaintiff's claims insofar as they are based on the Washington

19   Securities Act ("WSA"). To establish liability under the WSA, Somerset must prove that

20   Defendants "made material misrepresentations or omissions about the security, and [Somerset]

21   relied on those misrepresentations or omissions." *Stewart v. Estate of Steiner*, 93 P.3d 919, 922

22   (Wash. App. 2004). Both the Ninth Circuit and the Supreme Court of Washington have

23   recognized that the WSA closely resembles its federal counterpart, Rule 10b–5. *Burgess v.*

24   *Premier Corp.*, 727 F.2d 826, 833 (9th Cir. 1984); *Kittilson v. Ford*, 608 P.2d 264, 265 (Wash.

25   1980). Indeed, Washington courts have expressly adopted the federal definition of materiality.

26   *See Guarino v. Interactive Objects, Inc.*, 86 P.3d 1175, 1185 (Wash. App. 2004) ("For an

1   undisclosed fact to be material, 'there must be a substantial likelihood that the disclosures of the

2   omitted fact would have been viewed by the reasonable investor as having significantly altered

3   the 'total mix' of information made available.'") (quoting *Basic Inc.*, 485 U.S. at 231–32).

4        There are two differences between the WSA and Section 10b–5. First, the WSA does not

5   require the element of scienter. *Burgess*, 727 F.2d at 833; *Kittilson*, 608 P.2d at 265; *see also*

6   WASH. REV. CODE § 21.20.010. Second, Washington courts have interpreted the WSA to lack a

7   loss causation element. Rather, the courts have held that the "violation was in the

8   misrepresentation, not in how the misrepresentation affected the price of the stock." *Helenius v.*

9   *Chelius*, 120 P.3d 954, 970 (Wash. App. 2005) (citing *Hines v. Data Line Sys., Inc.*, 787 P.2d 8,

10   12–13 (Wash. 1990)). Indeed, according to the Washington Supreme Court, an investor may

11   recover under the WSA "without any requirement of showing a decline in the value of the

12   stock." *Hines*, 787 P.2d at 13.

13        Because Washington law utilizes substantially the same materiality analysis as that

14   already undertaken herein pursuant to Rule 10b-5, the Court will allow Plaintiff to amend claims

15   one, two, four, and five in order to address problems with its pleading under state law. *See*

16   Section B.1 *supra*. Claims three and six, however, are sufficiently pled for purposes of the WSA

17   for the reasons already explained above.

18      **D.**    **Marital Community**

19        Finally, Defendants also move to dismiss the marital communities of MacCord and Doyle

20   from the suit. (Dkt. No. 15 at 17–18.) In Washington, community assets are generally exempt

21   from separate tort judgments unless "the act occurred (1) in the course of managing community

22   property, or (2) for the benefit of the marital community." *Francom v. Costco Wholesale Corp.*,

23   991 P.2d 1182, 1194 (Wash. App. 2000) (quoting *Keene v. Edie*, 935 P.2d 588, 592 (Wash.

24   1997)). Somerset has pled that MacCord was the sole shareholder and President of W2W, and

25   the CEO and Director of FPH. (Dkt. No. 1 at ¶ 1.3.) Somerset has also pled that Doyle was the

26

1  CFO of FPH. (*Id*. at ¶ 1.4.) Furthermore, Somerset pled that MacCord and Doyle used the money

2  obtained from Somerset to fund FPC. (*Id*. at ¶ 3.18.)

3        At this stage, it can be presumed that because MacCord and Doyle's actions benefited

4  their place of employment and netted MacCord, at least, the funds from selling W2W's shares to

5  Somerset, this transfer of assets directly benefited the respective marital communities. *Cf*

6  *Farman v. Farman*, 611 P.2d 1314, 1318 (Wash. App. 1980) (barring marital community

7  liability because "from the perspective of a reasonable person, the wrongful acts in question are

8  unlikely to produce the desired community result."). In this case, the desired community result

9  was to obtain additional assets in the form of income for the community. At this early stage,

10  Somerset has pled sufficient facts to withstand a motion to dismiss.

11  **III.**   **<u>CONCLUSION</u>**

12        For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART

13  Defendants' motion to dismiss (Dkt. No. 15). Plaintiff is hereby granted leave to file an amended

14  complaint that corrects the deficiencies discussed herein. Plaintiff's amended complaint shall be

15  filed no later than **May 19, 2014**.

16        DATED this 6th day of May 2014.

17

18

19

20

21

22

23  John C. Coughenour
   UNITED STATES DISTRICT JUDGE

24

25

26

ORDER
PAGE - 15