1

2

3

4

5

6

7

8

THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10

11

12

13

14

15

SOMERSET COMMUNICATIONS
GROUP, LLC,

Plaintiff,

v.

WALL TO WALL ADVERTISING,

INC., *et al.*,

Defendants.

CASE NO. C13-2084-JCC

ORDER DENYING DEFENDANTS'
MOTION TO DISMISS
PLAINTIFF'S AMENDED
COMPLAINT

16

17

18

19

This matter comes before the Court on Defendants' Motion to Dismiss Plaintiff's

Amended Complaint (Dkt. No. 25).  Having thoroughly considered the parties' briefing and the

relevant record, the Court finds oral argument unnecessary and hereby DENIES the Motion for

the reasons explained herein.

20

## I.     BACKGROUND

21

22

23

24

25

26

Plaintiff Somerset Communications Group, LLC ("Somerset") sues Defendants Wall to

Wall Advertising, Inc. ("W2W"), Donald and Andrea MacCord, Shannon and Tracey Doyle, and

S.D. Doyle, Ltd. for securities fraud in connection with the purchase of shares of Fourpoints

Holding, LLC ("FPH").  (Amended Complaint, Dkt. No. 24.)  FPH was formed by W2W, Lubin

Outdoor, LLC ("Lubin"), and Fourpoints Investors ("FP Investors") for the purpose of holding

and operating Fourpoints Communications, LLC ("FPC"), a company that sold and operated

1    digital billboards on Native American Trust Lands.  (*Id.* at ¶ 3.2–3.3.)  Donald MacCord

2    ("MacCord") was the sole shareholder and President of W2W, and the Chief Executive Officer

3    of FPH.  (*Id.* at ¶ 1.3.)  Shannon Doyle ("Doyle") was the Chief Financial Officer of FPH.  (*Id.* at

4    ¶ 1.4.)  The Amended Complaint alleges that FPH was initially funded through a $5.5 million

5    dollar capital investment by FP Investors, a $1.5 million dollar investment by W2W, and a $1.1

6    million dollar investment by Lubin, with the promise of an additional $6.5 million dollar

7    investment from FP Investors.  (*Id.* at ¶ 3.4.)  Under FPH's operating agreement, all manager

8    members were required to consent to the sale of any units of stock.  (*Id.* at ¶ 3.52.)

9            In May/June of 2009, MacCord approached William Moore with an offer to purchase a

10   minimum of a five percent stake in FPH for $2 million.  (*Id.* at ¶ 3.17.)  The Amended Complaint

11   states that over the next six months, MacCord and Doyle aggressively courted Moore to

12   undertake the purchase of the stock.  During this time, MacCord and Doyle made numerous

13   statements to Moore and sent him five different documents between June 2009 and February

14   2010 detailing FPH's business plans and financial status.  (*Id.* at ¶¶ 3.19; 3.30; 3.41; 3.44; 3.54.)

15   Each of these documents, Plaintiff alleges, indicated that FPC had a steady income stream and

16   plans for aggressive expansion.  (*Id.*)  Specifically, these documents allegedly indicated that FPC

17   had significant and ongoing revenue from two signs in California (the "Pala Signs") and that FP

18   Investors would be investing an additional $6 million.  (*Id.* at ¶¶ 3.28; 3.45.)  According to the

19   Amended Complaint, neither of these statements was true: the California signs were either

20   "terminated" or "turned off" before June 2009 (*id.* at ¶ 3.11) and by late July 2009, FPC was

21   insolvent (*id.* at ¶ 3.13).  Plaintiff alleges that MacCord and Doyle failed to mention in any of

22   their communications that FPH was "functionally insolvent," and falsely stated revenue figures

23   and concealed that FP Investors had pulled their funding.  (*Id.* at ¶¶ 3.12.)

24           Allegedly lacking knowledge of all of this, in November 2009, Moore formed Somerset

25   with the intent of using it to purchase shares of FPH from W2W.  (*Id.* at ¶ 3.50.)  The month

26   before, MacCord and Doyle allegedly represented to Moore that MacCord wished to sell W2W's

ORDER DENYING DEFENDANTS' MOTION TO
DISMISS PLAINTIFF'S AMENDED COMPLAINT
PAGE - 2

1   shares to Somerset to secure operational capital for three lucrative investment ventures.  In

2   reality, the Amended Complaint alleges, MacCord and Doyle sought and ultimately used

3   Somerset's investment to keep FPH afloat despite its then-undisclosed serious financial troubles.

4   (*Id*. at ¶ 3.47; 3.48.)  Between December 2009 and August 2010, Somerset made nineteen

5   purchases of FPH stock from W2W, investing $2,028,000 in return for a 5.5 percent stake in the

6   company.  (*Id*. at ¶ 3.57.)  The Amended Complaint states that MacCord and Doyle informed

7   Somerset that the other managing partners, Lubin and FP Investors, had consented to the sale, as

8   was required by FPH's operating agreement.  (*Id*.)  However, neither of these two partners was

9   informed of the sale, the Amended Complaint alleges, and either MacCord or Doyle forged the

10  consent forms for each sale of stock.  (*Id*.)  MacCord and Doyle then allegedly used Somerset's

11  investment not for new lucrative ventures, as had been promised, but rather to pay FPC's

12  operating expenses and interest payments on a loan from FP Investors, all without informing

13  Somerset.  (*Id*. at ¶ 3.55.)  Somerset did not learn of FPC's financial troubles until it was

14  informed that MacCord and Doyle had been terminated in November 2010.  (*Id*. at ¶ 3.73.)

15  Shortly afterwards, Somerset learned that the consent forms had been forged and that FPH

16  believed Somerset to have no membership interest in the company.  (*Id*. at ¶ 3.75.)

17       Somerset now brings six claims for securities fraud under federal law (Section 10b of the

18  Securities Exchange Act of 1934/ Rule 10b-5 claims) and state law (Washington Securities Act)

19  arising from the misrepresentations and omissions MacCord and Doyle allegedly made before

20  and during the investment process.  (Amended Complaint, Dkt. No. 24, § IV.)  Specifically,

21  Somerset claims that Defendants (1) falsely represented assets and revenues of FPH, including

22  the "Pala Indian Tribe deal" and inflated accounts receivable (*id*. at ¶ 4.3); (2) fraudulently

23  omitted the fact that FPH was "essentially insolvent" on repeated occasions (*id*. at ¶ 4.10); (3)

24  fraudulently valued the company almost $30 million dollars above its true-market value (*id*. at ¶

25  4.16); (4) fraudulently omitted that Lubin was reducing its interest in FPH by selling its common

26  units to MacCord and W2W at a price much lower (forty percent) than the price offered to

ORDER DENYING DEFENDANTS' MOTION TO
DISMISS PLAINTIFF'S AMENDED COMPLAINT
PAGE - 3

1  Somerset  (*id*. at ¶ 4.22); (5) fraudulently omitted that FPH was in a forbearance agreement

2  deferring its interest payment to FP Investors (*id*. at 4.28); and (6) forged FP Investors' and

3  Lubin's signatures on consent forms for the sale of units to Somerset  (*id*. at ¶ 4.34).

4         In January 2014, Defendants moved to dismiss Somerset's claims, on the grounds that

5  Somerset failed to plead sufficient facts as to materiality, scienter, and causation under the

6  heightened standard for securities fraud.  (Defendants' Motion to Dismiss, Dkt. No. 15.)  This

7  Court found that while Somerset had met its burden with regard to claim six on federal grounds

8  and with regard to claims three and six under state law, Somerset had failed to meet the

9  heightened pleading requirements for claims one through five on federal law grounds and claims

10 one, two, four and five on state law grounds.  (Order, Dkt. No. 20.)  Availing itself of this

11 Court's dismissal without prejudice, Somerset filed an Amended Complaint on May 27th, 2014.

12 (Amended Complaint, Dkt. No. 24.)  Defendants, alleging persistent failure to comport with the

13 heightened pleading requirements of Rule 10b-5, filed a Motion to Dismiss the Amended

14 Complaint (Dkt. No. 25), which is now before the Court.

## II.    DISCUSSION

### A.    Motion to Dismiss Legal Standard

17        A party may move to dismiss a complaint for failure to state a claim upon which relief

18 can be granted.  Fed. R. Civ. P. 12(b)(6).  To withstand a Rule 12(b)(6) motion to dismiss, a

19 complaint must "provide more than a formulaic recitation of the elements of a cause of action,

20 and must assert facts that raise a right to relief above the speculative level."  *Lyons v.*

21 *Homecomings Fin. LLC*, 770 F. Supp. 2d 1163, 1166 (W.D. Wash. 2011) (quoting *Bell Atlantic*

22 *Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  When considering a Rule 12(b)(6) motion, the

23 court must take "all well-pleaded factual allegations as true and to draw all reasonable inferences

24 therefrom in favor of the plaintiff."  *Wyler Summit P'ship v. Turner Broadcasting Sys., Inc.*, 135

25 F.3d 658, 663 (9th Cir. 1998).  A court is not required to accept as true, however, "allegations

26 that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re*

ORDER DENYING DEFENDANTS' MOTION TO
DISMISS PLAINTIFF'S AMENDED COMPLAINT
PAGE - 4

1     *Gilead Sciences Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

2         In addition to the above "plausibility" standard, a complaint raising Rule 10b–5 fraud

3 claims must also satisfy the "particularity" requirement of Federal Rule of Civil Procedure 9(b)

4 and the heightened pleading requirements of the Private Securities Litigation Reform Act

5 ("PSLRA").  *Reese v. BP Exploration (Alaska) Inc*., 643 F.3d 681, 690 (9th Cir. 2011); *WPP*

6 *Luxembourg Gamma Three Sarl v. Spot Runner, Inc.*, 655 F.3d 1039, 1047 (9th Cir. 2011).

7 Under Rule 9(b), a complaint pleading fraud must "state with particularity the circumstances

8 constituting fraud or mistake."  *Capitol W. Appraisals, LLC v. Countrywide Fin. Corp.*, 759 F.

9 Supp. 2d 1267, 1271 (W.D. Wash. 2010) (citing *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097,

10 1106 (9th Cir. 2003)).  This requirement is best understood as requiring a plaintiff to identify the

11 "who, what, when, where, and how of the misconduct charged."  *Id*.

12         Moreover, the PSLRA requires that a securities fraud plaintiff "specify each statement

13 alleged to have been misleading, the reason or reasons why the statement is misleading, and, if

14 an allegation regarding the statement or omission is made on information and belief, . . . all facts

15 on which that belief is formed."  15 U.S.C. § 78u-4(b)(1)(B); *see Reese*, 643 F.3d at 690.

16       B.      **Federal Securities Law Claims**

17         Section 10(b) of the 1934 Act makes it unlawful "for any person, directly or indirectly . .

18 . [t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative

19 or deceptive device or contrivance in contravention of such rules and regulations as the

20 Commission may prescribe."  15 U.S.C. §§ 78j; 78j(b).  Rule 10b–5, promulgated under Section

21 10(b), in turn provides that  "[i]t shall be unlawful for any person . . . [t]o make any untrue

22 statement of a material fact or to omit to state a material fact necessary in order to make the

23 statements made, in the light of the circumstances under which they were made, not misleading."

24 *Livid Holdings Ltd. v. Salomon Smith Barney*, *Inc.*, 416 F.3d 940, 946 (9th Cir. 2005) (citing 17

25 C.F.R. § 240.10b–5).  In order to state a claim under Rule 10b–5, a plaintiff must plead: "(1) a

26 material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between

ORDER DENYING DEFENDANTS' MOTION TO
DISMISS PLAINTIFF'S AMENDED COMPLAINT
PAGE - 5

1  the misrepresentation or omission and the purchase or sale of a security [transaction causation];

2  (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation."

3  *WPP Luxembourg*, 655 F.3d at 1048.  As in their first Motion to Dismiss, Defendants again

4  assert that Plaintiff's Amended Complaint fails to adequately plead materiality, scienter, and

5  causation.  The Court examines Plaintiff's reattempts to plead these elements.

6      1. **Materiality**

7      A misrepresentation or omission is material if there is "a substantial likelihood that the

8  disclosure of the omitted fact would have been viewed by the reasonable investor as having

9  significantly altered the "total mix of information made available."  *Reese v. Malone*, 747 F.3d

10  557, 568 (9th Cir. 2014) (citing *Basic Inc. v. Levinson*, 485 U.S. 224, 231–232 (1988)).

11  "Although determining materiality in securities fraud cases should ordinarily be left to the trier

12  of fact, conclusory allegations of law and unwarranted inferences are insufficient to defeat a

13  motion to dismiss for failure to state a claim."  *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th

14  Cir. 2010).  To plead materiality and falsity, Somerset "must (1) specify each allegedly

15  misleading statement or omission, (2) explain why the statement is misleading, and (3) if the

16  allegation regarding the statement or omission is made on information and belief, the complaint

17  shall state with particularity all facts on which that belief is formed."  *Id*. at 1109 (quoting 15

18  U.S.C. § 78u–4(b)(1)(B)).

19      In our May 2014 Order, this Court found that in its original Complaint, Somerset had

20  sufficiently pled materiality as to claims three and six, but failed to plead materiality or falsity

21  with sufficient particularity for claims one, two, four, and five.  (Dkt. No. 20 at 7.)

22      In **claim one**, Somerset argues that Defendants committed securities fraud by

23  misrepresenting FPH's "assets and revenue" while soliciting Moore to purchase units of stock.

24  (Amended Complaint, Dkt. No. 24 at ¶ 4.3.)  Specifically, Somerset alleges that Defendants'

25  repeated statements that FPH had $336,000 in monthly revenue from the Pala Signs (*id*. at ¶

26  3.45) and that the two signs were operational in California (*id*. at ¶ 3.11.) were false.  In our

1    previous Order granting in part Defendants' first Motion to Dismiss, this Court noted that

2    "Somerset has failed to plead with specificity what percentage of FPC's total or expected income

3    the California signs represented, how far $400,000 was from FPC's actual revenue, or whether

4    FPH still expected revenue from the California signs even if they had been 'turned off' or

5    'terminated.'"  (Order, Dkt. No. 20 at 8.)  We informed Plaintiff that if it was to satisfy the

6    PSLRA's heightened pleading standard with regard to materiality, its amended complaint "must

7    affirmatively specify . . . *the reason or reasons* why [each] statement or omission was

8    misleading."  (*Id.* (citing 15 U.S.C. § 78u–4(b)(1)(B)).)

9         The Amended Complaint now comports with our instructions and has established the

10   materiality element with regard to claim one.  In the Amended Complaint, Plaintiff answers the

11   Court's question regarding the percentage of projected monthly revenue that was comprised of

12   the revenue from the already-terminated and set-to-be-dismantled Pala Signs (Amended

13   Complaint, Dkt. No. 24 at ¶ 3.45.)  Plaintiff now explains the reasons why this misrepresentation

14   was misleading.  (*Id.* at ¶  3.18;  3.39; 3.40; 3.46 ("Had Somerset known that at least one third

15   (1/3) of the Operational Results and Projected revenues for the beginning of 2010 and one fifth

16   (1/5) of the average monthly revenue thereafter was fabricated from the [already] terminated

17   Pala Signs, Somerset would not have purchased FPH units from W2W, MacCord and Doyle.").)

18   Further, in the Amended Complaint, Plaintiff pleads sufficient facts regarding the falsity of any

19   statements of the expected revenue from the Pala Signs.  As Plaintiff explains in its Response:

20
> MacCord's prior declaration confirms that when he and Doyle reported the
21   operating Pala Signs to Somerset in October 2009, he knew "the Pala deal fell
     apart in June 2009." . . . It is inconceivable that Doyle, as CFO of a small
22   company with less than 20 employees would not know that no revenue was
     coming from the terminated Pala Signs and, therefore, his projections of that non-
23   existent revenue were unquestionably false and misleading.

24   (Plaintiff's Response to Defendants' Motion to Dismiss Amended Complaint, Dkt. No. 26 at 8-9

25   (citing Amended Complaint, Dkt. No. 24 at ¶ 3.11).)  In their Motion to Dismiss, Defendants do

26

ORDER DENYING DEFENDANTS' MOTION TO
DISMISS PLAINTIFF'S AMENDED COMPLAINT
PAGE - 7

1   not sufficiently address that alleged October 2009 misrepresentation (Amended Complaint, Dkt.

2   No. 24 at ¶ 3.39) of the continued operation of the Pala Signs.  (*See* Motion to Dismiss, Dkt. No.

3   25 at 8 (focusing instead on the June 2009 misrepresentation regarding the Pala Signs).)  Further,

4   Plaintiff pleads sufficient facts regarding Defendants' knowledge of the falsehood to take such

5   misrepresentation out of the safe harbor for forward-looking statements.  (*See* Amended

6   Complaint, Dkt. No. 24 at ¶¶ 3.11; 3.6; 3.7.)  Therefore, Plaintiff has now pled claim one with

7   sufficient particularity, especially as regards the Pala Signs' termination and expected revenue, to

8   meet their materiality requirement.

9

10      With regard to **claim two**, in which Somerset alleges that Defendants failed to disclose

11  that Fourpoints was insolvent before and during their solicitation of Moore, Somerset has also

12  adequately amended the materiality aspect.  The Court previously found fault with Plaintiff's

13  original Complaint, which only included allegations of omissions of this information at points in

14  time that the Plaintiff had already invested in FPH.  (*See* Order, Dkt. No. 20 at 8.)  However, in

15  its Amended Complaint, Plaintiff alleges particular facts regarding the time at which Doyle and

16  MacCord ought to have known that Fourpoints was insolvent (*see* Amended Complaint, Dkt. No.

17  24 ¶ 3.13),[1] as well as facts regarding the *subsequent* purchase of units in reliance of the reports

18  containing the omissions (*see id.* at ¶¶ 3.50-51).[2]  While Defendants are correct in arguing that

19  knowledge of insolvency in late July would not give rise to post-hoc material "omissions" in

20  June 2009 (*see* Defendants' Motion to Dismiss, Dkt. No. 25 at 10), this argument does not rebut

21

22

23  [1] "According to a declaration under oath by Doyle in the prior litigation with FPH, by late July 2009, FPC
    was insolvent. Doyle declares that at that time FPC 'simply did not have a large enough revenue base from

24  its modest sign plant to afford [interest and preferred dividend] payments, and without further funding to
    develop more opportunities in Native America, the best Fourpoints could do was exist on current
    operations, deferring these interest and debt payments until a new funding partner could be found.'"

25  [2] "In November 2009, Moore formed Somerset to purchase common units of FPH from W2W. . . . On or about
    December 4, 2009, Somerset entered into two Assignment of Units agreements with W2W, FPH and MacCord

26  whereby Somerset purchased a total of 92.2 common units of FPH for the purchase price of $250,000.00, or
    $2,711.50 per unit."

1    Plaintiff's now-sufficient pleading with regard to the insolvency omissions inherent in any of

2    Defendants' post-July representations.  (*See e.g.,* Amended Complaint, Dkt. No. 24 at ¶ 3.44

3    ("On or about October 27, 2009, under the direction of MacCord, Doyle . . . on behalf of FPH in

4    the offer and sale of FPH common units, provided to Moore via email in Washington FPC's

5    revised Operational Results/Projection Summary for 2009-10.").)  And such knowledge of the

6    insolvency would suffice to take the statements out of the Section 78u-5 "safe harbor."  Thus,

7    Plaintiff's Amended Complaint now pleads facts sufficient to fulfill the materiality requirement

8    for claim two.

9        Although Defendants challenge **claim three** (valuation of the company/percentage of

10   units omission) on materiality and falsity grounds in their Motion, the Court has already found

11   that Somerset has sufficiently plead materiality for this claim, in the original Complaint.  (Order,

12   Dkt. No. 20 at 7.)  Even if there have been some changes to claim three from the original

13   Complaint, the Amended Complaint still alleges that Plaintiff agreed to purchase five percent of

14   FPH for $2 million dollars, resulting in a company valuation almost $30 million dollars lower

15   than the actual valuation.  (Amended Complaint, Dkt. No. 24 at ¶¶ 3.23; 3.25.)  This suffices to

16   establish falsity.

17       In **claim four**, Somerset claims that Defendants failed to disclose that Lubin was

18   reducing its interest in FPH by selling its units to W2W and that W2W purchased those units at a

19   much lower price than it offered to Somerset.  In our May 2014 Order, this Court informed

20   Plaintiff that we could not determine whether this omission would have "significantly altered the

21   total mix of information" available.  (Dkt. No. 20 at 9.)  We instructed Plaintiff to plead facts

22   such as why Lubin chose to reduce its interest, how many units of stock Lubin sold to W2W, or

23   the difference in price between the two sales.  Plaintiff largely comported with these requests and

24   pled additional facts pertinent to this claim in paragraphs 3.65-3.69 of the Amended Complaint.

25   (Dkt. No. 24 at 15.)  For instance, Plaintiff states that Lubin sold 122.22 units to W2W for $1636

26   per unit (*id.* at ¶ 3.65) and that if it had known that "an original investor, Lubin Outdoor"

ORDER DENYING DEFENDANTS' MOTION TO
DISMISS PLAINTIFF'S AMENDED COMPLAINT
PAGE - 9

"valued FPH units at nearly 40% less than what Somerset was paying . . . [and] was cashing out nearly a fifth of its original investment. . . Somerset would have required an explanation . . . before purchasing additional FPH units" (*id.* at ¶¶ 3.64-68).  While Defendants are correct in pointing out that Plaintiff's Amended Compliant did not plead facts speculating *why* Lubin was selling these shares (*see* Defendants' Motion to Dismiss, Dkt. No. 25 at 11), the other additional facts pleaded by Plaintiff in the Amended Complaint nevertheless suffice to explain the reasons why this omission would be misleading (such as the fact that these shares were being unloaded by an original investor at a full *forty percent* less than what Somerset was paying, which suggests a lack of confidence in the company's future).  Thus, Plaintiff has fulfilled the materiality pleading requirement for claim four.

In **claim five**, Plaintiff alleges another omission –Defendants' failure to disclose that FPH was in loan forbearance, deferring its interest payments to FP Investors.  The Court previously found fault with Plaintiff's failure to explain the size of the interest payments, to provide details of all outstanding obligations to FP Investors, and to explain how Plaintiff came to know such information.  (*See* Order, Dkt. No. 20 at 9.)  In the Amended Complaint, Plaintiff provides more detail regarding FPC's forbearance agreement with debtor FP Investors.  For instance, in paragraphs 3.14 and 3.15, Plaintiff states that:

> According to an FPC "Projection Summary 2010" provided by Doyle to Somerset, semi-annual dividends due FP Investors were $220,000. According to an FPC Statement of Operations January through June 2009 provided to Somerset by Doyle, FPC's monthly interest obligation averaged $63,112. Doyle declares that interest on the FP Investors loan rose from 12% to 15% in November, 2009, and MacCord declares that the January 2010 quarterly interest payment to FP Investors was $249,167. According to FP Investors, as of November 1, 2009 FPC was operating under a forbearance agreement deferring interest and distribution payments to FP Investors *in order to* allow MacCord to recapitalize FPH, pay off all loans from FP Investors and to redeem all FP Investor's preferred membership units in FPH.

(Dkt. No. 24 at 5 (emphasis added).)  These purported facts lend credibility to Plaintiff's

1  allegations of Defendants' repeated omissions of the forbearance agreement.  These facts also

2  call into question the veracity of statements that FP Investors had committed to provide an

3  additional $6 million dollars of funding in 2009 when in truth, according to MacCord himself,

4  FP Investors would not invest any longer.  (*See* Amended Complaint, Dkt. No. 24 at 7.)  In terms

5  of the reasons this omission would have altered the "total mix" of information available to

6  Somerset, Plaintiff plainly states that "[h]ad Somerset known that neither FP Investors nor actual

7  revenues would fund growth, it would not have purchased FPH units." (*Id.*)  Thus, it is not the

8  case, as Defendants imply in their Motion to Dismiss (*see* Dkt. No. 25 at 12) that Plaintiff's only

9  "reason" for the materiality of this omission is its conclusory statement identifying such

10  information as "critical" at paragraph 4.29 of the Amended Complaint (Dkt. No. 24 at 21).  In

11  the Amended Complaint, Plaintiff has pled significant additional facts regarding the specific

12  omissions and centrality of these omissions to the future of financing opportunities available to

13  Fourpoints, and thus, its performance outlook.  Such additional information fulfills Plaintiff's

14  materiality burden as to claim five.

15        Accordingly, claims one, two, four and five now plead sufficiently specific and particular

16  facts to satisfy the 10b-5 materiality requirements at this stage.

17        2.  **Scienter**

18        In our May 2014 Order, we found that Plaintiff had failed to establish the scienter

19  element for claims one, two, four, five, and six.  However, we stated that:

20        [I]f Plaintiff's amended complaint adequately pleads that the misrepresentations
21        and omissions were material, the Court would likely be satisfied that scienter
        would also be demonstrated by virtue of MacCord's and Doyle's positions within
22        the company, their direct role in courting Moore to invest, and their alleged actual
        knowledge of the falsity and materiality of the statements.

23  (Order, Dkt. No. 20 at 11.)  As explained in Section II(b)(1), *supra,* Plaintiff has indeed

24  established materiality for these claims.  Further, Plaintiff has interspersed the Amended

25  Complaint with several explanations justifying its allegations that the several misrepresentations

26

ORDER DENYING DEFENDANTS' MOTION TO
DISMISS PLAINTIFF'S AMENDED COMPLAINT
PAGE - 11

and omissions were made intentionally. Moreover, Defendants do not make scienter objections in their Motion to Dismiss the Amended Complaint (Dkt. No. 25). Thus, this Court is satisfied that Plaintiff has pled Rule 10b-5's requirement of scienter.

   3. **Causation**

   Rule 10b-5's causation requirement "includes both transaction causation, that the violations in question caused the plaintiff to engage in the transaction, and loss causation, that the misrepresentation or omissions caused the harm." *Livid Holdings,* 416 F.3d at 949. To plead loss causation, a plaintiff must make "particular allegations as to 'what the relevant economic loss might be,' and 'what the causal connection might be' between the fraud alleged and the economic losses actually suffered." *In re Gilead Sciences Sec. Litig.*, 536 F.3d at 1056 (quoting *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 347 (2005)). The misrepresentation "need not be the sole reason for the decline in value of the securities, but it must be a substantial cause." *In re Gilead Sciences Sec. Litig.*, 536 F.3d at 1055. Several circuit courts have expressed disapproval at dismissing a securities action on a 12(b)(6) motion for lack of causation. *See id*. at 1057 (citing to Second and Third Circuit opinions holding that resolving causation is inappropriate at the motion to dismiss stage). However, the Supreme Court has held that a complaint must, at a minimum, "provide a defendant with some indication of the loss and the causal connection that the plaintiff has in mind." *Dura Pharm*, 544 U.S. at 347.

   In our May 2014 Order, we found that Plaintiff had "failed to plead any statements relating to how the false statements and/or omissions about FPH's revenue and assets (claim one), FPH's alleged insolvency (claim two), the withdrawal of FP Investors' support (claim three), Lubin's stock sale (claim four), or the default [now forbearance] on the interest payment to FP Investors (claim five) affected its decision to purchase stock or caused the loss it suffered." (Dkt. No. 20 at 12.) We instructed Plaintiff that "to adequately plead causation, the [amended] complaint must, at minimum, include some allegation that Somerset would not have engaged in the transaction but for the misstatements and omissions or that these misrepresentations and

omissions actually caused some related loss." (*Id.* at 12-13.)  *See also Red River Res., Inc. v.*
*Mariner Sys., Inc.,* No. C11-02589, 2012 WL 2507517 at *7 (D. Ariz. June 29, 2012) (holding
that loss causation requirement was met when plaintiff stated it would not have invested had it
known the opportunity was artificially inflated due to defendant's misstatements).

      In Plaintiff's amended complaint, Plaintiff states, in reference to claims one through five,
that "as a direct and proximate result of their unlawful acts, W2W, MacCord and Doyle, obtained
money from Somerset and caused Somerset to suffer damages exceeding $75,000.00."
(Amended Complaint, Dkt. No. 24 at ¶¶ 4.9 (claim one); 4.15 (claim two); 4.21 (claim three);
4.27 (claim four); and 4.33 (claim five).)  This repeated statement is a summary of the averments
that continue throughout the Amended Complaint that Plaintiff would not have bought the FP
units, or would have at least asked more questions before making the purchases, had these
misrepresentations and omissions not been made.  (*See e.g*., Amended Complaint, Dkt. No. 24 at
5 ("Somerset was not interested in raising money for a startup in the billboard industry, and was
only attracted to FPC by its positive cash flow, its capital to achieve the professed major growth
opportunity to build out its network of signs over the next three to five years, and, significantly,
the ability of FPC to return the guaranteed distributions right away.").)  Thus, Plaintiff now
identifies the theory by which such harm occurred, as well as the specific quantity of that harm.

      Defendants also impliedly argue that even if the statements in Plaintiff's Amended
Complaint were sufficient to establish transaction causation (i.e., that Plaintiff would not have
bought the units but for the omissions and misrepresentations), they are not sufficient to establish
either reliance (i.e., that Plaintiff actually believed and was motivated to purchase by the
omissions and misstatements) or loss causation (i.e., that Defendants' alleged misrepresentations
and omissions actually caused the economic loss).

      However, Plaintiff successfully pleads reliance in its Amended Complaint (Dkt. No. 24 at
13), and explains further in its Response to Defendants' Motion to Dismiss that:

      Somerset's Amended Complaint explicitly alleges that it "justifiably did rely"

ORDER DENYING DEFENDANTS' MOTION TO
DISMISS PLAINTIFF'S AMENDED COMPLAINT
PAGE - 13

1

2

upon the false statements of assets and revenue when it paid $2,018,000 for
worthless units of the insolvent FPH.  Somerset also alleges that its valuation and
decision to purchase units "relied upon" and "depended upon" Defendants'
misrepresentations of growth, expansion and increasing profits. While Somerset
could not have relied on what Defendants' concealed, Somerset does explicitly
allege that it would not have purchased the worthless units had it known of FPH's
insolvency or forbearance agreement. Somerset also alleges that FPC's healthy
financial condition was "a critical factor" that it "depended upon" in its decision to
purchase units, such that had Somerset known of FPC's actual insolvency it would
not have purchased worthless units. Somerset's Amended Complaint also alleges
that Defendants knew that FPC's insolvency and its forbearance agreement were
"critical information undermining FPC's reported assets, revenues and profit and
material to Somerset's decision to purchase." In addition, Somerset's Amended
Complaint alleges that Somerset "relied upon the false capitalization" and "[h]ad
Somerset known" of prior unit sales and concurrent Lubin sales at a lower price it
would not have purchased FPH units, or at least not paid the offered price.
Somerset has sufficiently alleged that its $40 Million valuation of the company
was nearly three-quarters higher than the value represented by the actual
percentage of ownership sold by MacCord, and that it paid $2,666 per unit for
757.16 units when internal sales were at $1636 per unit.

(Plaintiff's Response Opposing Defendants' Motion to Dismiss Amended Complaint, Dkt. No. 26
at 15-16 (citing Amended Complaint, Dkt. No. 24 at ¶¶ 4.7; 3.21; 3.24; 3.27; 3.38; 3.49; 3.70;
4.12; 4.29; 3.64; 3.68; 3.67; 3.25; 3.65).) These allegations sufficiently plead reliance, especially
at this motion to dismiss stage, at which the Supreme Court only requires that the complaint
"provide the defendant with some indication of the loss and the casual connection that the
plaintiff has in mind," *see Dura Pharm,* 544 U.S. at 347.

And, with regard to loss causation, Plaintiff correctly states that "because FPH is a
privately held company, Somerset may prove loss causation by showing that the . . .
misrepresentations or omissions induced Somerset to purchase units and that the revelation of
FPC's actual financial condition *is related to* Somerset's loss." (Plaintiff's Response Opposing
Defendant's Motion to Dismiss, Dkt. No. 26 at 16 (emphasis added) (citing *WPP Lux. Gamma
Three Sarl,* 655 F.3d at 1054).) Plaintiff's repetitions that it would not have purchased FPH units
but for the misrepresentations and omissions, *and the fact that those very misrepresentations and*

ORDER DENYING DEFENDANTS' MOTION TO
DISMISS PLAINTIFF'S AMENDED COMPLAINT
PAGE - 14

1  *omissions logically "touched upon" the reason Somerset's units allegedly became worthless* is a

2  sufficient pleading of loss causation at this stage.  *See McGonigle v. Combs*, 968 F.2d 810, 821

3  (9th Cir. 1992).  Defendants remind the Court that *McGonigle* holds that "[t]he plaintiff must

4  prove not only that, had he known the truth, he would not have acted, but in addition that the

5  untruth was in some reasonably direct or proximate way responsible for his loss."  (Defendants'

6  Reply, Dkt. No. 27 at 6 (citing 968 F.2d at 821).)  However, throughout the Amended Complaint,

7  Plaintiff has sufficiently linked the various omissions and misrepresentations (such as the

8  improbability of future revenue from the Pala Signs, the concealed dumping of the stock by

9  original investors, and the hidden forbearance arrangements with the company's debtors), to the

10  very financial faults within the company that Plaintiff alleges caused the losses in excess of

11  $75,000 dollars.  Further, it is also true that discovery may yield a clearer picture of the linkage

12  between FP's financial troubles and the alleged misrepresentations and omissions.

13        Thus, Plaintiff has successfully discharged its causation burden in this Amended

14  Complaint.  As these previous three subsections address Defendants' objections to the Amended

15  Complaint, as well as the Court's previous objections to Plaintiff's first Complaint, it stands that

16  Plaintiff has successfully pled under the general 12(b)(6) plausibility standard, the heightened

17  pleading requirements of Federal Rule of Civil Procedure 9(b) (particularity), and the PSLRA's

18  myriad requirements.  Therefore, Defendants' Motion to Dismiss is DENIED with regard to

19  Plaintiff's federal law claims.

20        **C.  Washington State Law Claims**

21        In our May 2014 Order, we explained that, given the less onerous pleading standards

22  presented by the Washington Securities Act, Plaintiff's previously-dismissed claims one, two,

23  four, and five could be resurrected in light of a showing of Rule 10b-5 materiality.  (Order, Dkt.

24  No. 20 at 14.)  Plaintiff has now successfully pleaded materiality with regard to these four claims,

25  *see* Section II(B)(1), *supra*.  Defendants do not contest this in their Motion to Dismiss.  Therefore,

26  the Washington state law basis for Plaintiff's claims has been successfully pled.

ORDER DENYING DEFENDANTS' MOTION TO
DISMISS PLAINTIFF'S AMENDED COMPLAINT
PAGE - 15

1   **III.    CONCLUSION**

2           For the foregoing reasons, Defendants' Motion to Dismiss the Amended Complaint (Dkt.

3   No. 25) is DENIED.

4           DATED this 30th day of October 2014.

5

6

7

8

9

10

11          John C. Coughenour
            UNITED STATES DISTRICT JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER DENYING DEFENDANTS' MOTION TO
DISMISS PLAINTIFF'S AMENDED COMPLAINT
PAGE - 16