THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SOMERSET COMMUNICATIONS GROUP, LLC, | CASE NO. C13-2084-JCC |
| Plaintiff, | ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT RE PLAINTIFF'S SECURITIES FRAUD CLAIMS |
| v. | |
| WALL TO WALL ADVERTISING, INC., *et al.*, | |
| Defendants. | |

This matter comes before the Court on Defendants' Motion for Summary Judgment (Dkt. No. 51). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby DENIES the Motion for the reasons explained herein.

## I.     BACKGROUND

Plaintiff Somerset Communications Group, LLC ("Somerset") sues Defendants Wall to Wall Advertising, Inc. ("W2W"), Donald and Andrea MacCord, Shannon and Tracey Doyle, and S.D. Doyle, Ltd. for securities fraud in connection with Somerset's purchase of shares of Fourpoints Holding, LLC ("Fourpoints"). (Amended Complaint, Dkt. No. 24.) Donald MacCord ("MacCord") was the sole shareholder and President of W2W, and the Chief Executive Officer of Fourpoints. (*Id.* at ¶ 1.3.) Shannon Doyle ("Doyle") was the Chief Financial Officer

of Fourpoints.  (*Id*. at ¶ 1.4.)  Fourpoints was formed by W2W, Lubin Outdoor, LLC ("Lubin"),
and Fourpoints Investors ("FP Investors") for the purpose of holding and operating Fourpoints
Communications, LLC, a company that built and operated digital billboards on Native American
Trust Properties.  (*Id*. at ¶ 3.2–3.3.)  Plaintiff alleges that Fourpoints was initially funded through
a $5.5 million capital investment by FP Investors (a/k/a DH Capital), a $1.5 million investment
by W2W (a/k/a MacCord Partners), and a $1.1 million investment by Lubin, with the promise of
an additional $6.5 million investment from FP Investors.  (*Id*. at ¶ 3.4.)  Under Fourpoints'
operating agreement, the consent of all manager members (which included FP Investors and
Lubin) was required prior to the sale of any units of stock.  (*Id*. at ¶ 3.52.)

According to Plaintiff, in May or June of 2009, MacCord approached William Moore, a
social acquaintance, with an offer to purchase a five percent stake in Fourpoints for $2 million,
from W2W (who would assign its shares).  (*Id*. at ¶ 3.17.)  The Amended Complaint states that
over the next six months, MacCord and Doyle aggressively courted Moore to purchase the stock.
During this time, MacCord and Doyle made numerous statements to Moore and sent him five
different documents between June 2009 and February 2010 detailing, *inter alia*,  Fourpoints'
business plans, existing signs, the investment opportunity, 2009 operational results and
projections, and year-end actual operational results.  (*Id*. at ¶¶ 3.19; 3.30; 3.41; 3.44; 3.54.)
Each of these documents, Plaintiff alleges, indicated that Fourpoints had a steady income stream
and plans for aggressive expansion.  (*Id*. at 3.31; 3.45.)  Specifically, these documents allegedly
indicated, as late as autumn 2009, that Fourpoints had significant and ongoing revenue from two
signs in California (the "Pala Signs"), and that FP Investors would be investing an additional $6
million.  (*Id*. at ¶¶ 3.12; 3.28; 3.41; 3.45.)  According to the Amended Complaint, neither of
these statements was true: the Pala signs were either "terminated" or "turned off" due to local
land use regulations *before or in* June 2009 (*id*. at ¶ 3.11) and by late July 2009, Fourpoints was
insolvent and FP Investors had indicated that no more investment funds would be forthcoming
(*id*. at ¶ 3.12; 3.13).  Plaintiff alleges that MacCord and Doyle failed to mention in any

1   communication that Fourpoints was functionally insolvent, falsely stated revenue figures, and

2   concealed that FP Investors had retracted their investment commitment. (*Id*. at ¶¶ 3.49.)

3          Allegedly lacking knowledge of Fourpoints' true condition, in November 2009, Moore

4   formed Somerset as an entity through which to purchase shares of Fourpoints from W2W. (*Id*. at

5   ¶ 3.50.) Plaintiff states that in the preceding month, MacCord and Doyle had stated that

6   MacCord wished to sell W2W's shares of Fourpoints to Somerset in order to generate capital for

7   three lucrative investment ventures. (*Id*. at ¶ 3:47.) In reality, the Amended Complaint

8   maintains, MacCord and Doyle sought and ultimately used Somerset's investment to keep

9   Fourpoints afloat despite its then-undisclosed financial troubles. (*Id*. at ¶ 3.48.) Between

10   December 2009 and August 2010, Somerset made nineteen purchases of Fourpoints stock from

11   W2W, investing $2,028,000 in return for a 757.16 units of common stock. (*Id*. at ¶ 3.57.)

12          The Amended Complaint states that MacCord and Doyle informed Somerset that the

13   other managing partners, Lubin and FP Investors, had consented to each individual sale of

14   shares, as was required by Fourpoints' operating agreement. (*Id*.) However, the Amended

15   Complaint alleges that in reality, neither of these two partners was informed of the sale, and

16   either MacCord or Doyle forged the consent forms for several of the sales. (*Id* at ¶3:53.)

17   MacCord and Doyle then allegedly used Somerset's investment not to fund new ventures, as had

18   been promised, but rather to pay Fourpoints' operating expenses and interest on the loan from FP

19   Investors, all without informing Somerset. (*Id*. at ¶ 3.55.) Somerset allegedly did not learn of

20   Fourpoints' financial troubles until Somerset was informed that MacCord had been dismissed by

21   Fourpoints' other shareholders in November 2010. (*Id*. at ¶ 3.73.) Around this time, Somerset

22   was also informed by Fourpoints and FP Investors that FP Investors had not consented to any of

23   W2W's assignments/sales of Fourpoints units to Somerset, that the consent forms had been

24   forged, and that Fourpoints believed Somerset to have no membership interest in the company.

25   (*Id*. at ¶ 3.74; 3.75.)

26          Somerset brought six claims for securities fraud under federal law (Section 10b of the

1    Securities Exchange Act of 1934/Rule 10b-5) and state law (Washington Securities Act) arising

2    from the misrepresentations and omissions MacCord and Doyle allegedly made before and

3    during the period in which Somerset invested in Fourpoints.  (Amended Complaint, Dkt. No. 24,

4    § IV.)  Specifically, Somerset brings Cause of Action One, alleging that Defendants falsely

5    represented Fourpoints' assets and revenues, especially regarding the "Pala Indian Tribe deal"

6    (*id*. at ¶ 4.3); Cause of Action Two, alleging that Defendants fraudulently omitted the fact that

7    Fourpoints was "essentially insolvent" on repeated occasions (*id*. at ¶ 4.10); Cause of Action

8    Three, alleging that Defendants misrepresented the percentage of Fourpoints shares that

9    Somerset was obtaining (*id*. at ¶ 4.16); Cause of Action Four, alleging that Defendants

10   fraudulently omitted Lubin's reduction of its interest in Fourpoints and sale of its common units

11   to MacCord and W2W at a price much lower (forty percent) than the price W2W was then

12   offering to Somerset  (*id.* at ¶ 4.22); Cause of Action Five, alleging that Defendants fraudulently

13   omitted Fourpoints' forbearance agreement deferring its interest payment to FP Investors (*id*. at ¶

14   4.28); and Cause of Action Six, alleging that Defendants forged FP Investors' and Lubin's

15   signatures on consent forms for the assignment/sale of units to Somerset  (*id*. at ¶ 4.34).

16        Before the Court is Defendants' Motion for Summary Judgment re Plaintiff's Securities

17   Fraud Claims (Dkt. No. 51).  For the following reasons, the Court finds that Defendants are not

18   entitled to judgment as a matter of law at this stage, and denies Defendants' Motion.

19   **II.   DISCUSSION**

20        **A.    Legal Standards**

21             1.  *Federal Securities Fraud Claims*

22        To ultimately prove its Rule 10b-5 securities fraud claims, Somerset must establish (1) a

23   material misrepresentation or omission by Defendants; (2) scienter; (3) a connection between the

24   misrepresentation or omission and the purchase or sale of a security; (4) reliance on the

25   misrepresentation or omission; (5) economic loss; and (6) loss causation.  *Dura*

26   *Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 341-342 (2005).   Information is material when

1   there is a "substantial likelihood that the disclosure of the omitted fact would have been viewed

2   by the *reasonable* investor as having significantly altered the 'total mix' of information made

3   available." *Basic Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988) (emphasis added).

      2.   *Washington Securities Fraud Claims*

5         To ultimately prove its claims under the Washington Securities Act (RCW 21.20 *et seq.*),

6   Somerset must establish that Defendants "made material misrepresentations or omissions about

7   the security, and [Somerset] relied on those misrepresentations or omissions." *Stewart v. Estate*

8   *of Steiner*, 122 Wash. App. 258, 264 (2004).  Intent to defraud is not required under the state

9   statute.  *Go2Net, Inc. v. FreeYellow.com, Inc.,* 126 Wash. App 769, 775 (2005).   Under the

10  WSA, "reliance must be reasonable under the surrounding circumstances." *FutureSelect*

11  *Portfolio Management, Inc. v. Tremont Group Holdings, Inc.,* 175 Wash. App. 840, 868 (2013).

      3.   *Summary Judgment Standard*

13        However, because Defendants move for summary judgment, Plaintiff need not *prove* the

14  above elements at this stage of the litigation.  Instead, Somerset's claims must be evaluated

15  under the permissive summary judgment standard.  "Summary judgment is appropriate only if,

16  taking the evidence and all reasonable inferences drawn therefrom in the light most favorable to

17  the non-moving party [here, Plaintiff], there are no genuine issues of material fact and the

18  moving party [here, Defendants] is [are] entitled to judgment as a matter of law.  If, as to any

19  given material fact, evidence produced by the moving party . . . conflicts with evidence produced

20  by the nonmoving party . . . , [the court] must assume the truth of the evidence set forth by the

21  nonmoving party with respect to that material fact." *Furnace v. Sullivan,* 705 F.3d 1021, 1026

22  (9th Cir. 2013).  In resolving summary judgment motions, courts are not at liberty to weigh the

23  evidence, make credibility determinations, or draw inferences from the facts that are adverse to

24  the non-moving party.  As the Supreme Court has held, "[c]redibility determinations, the

25  weighing of the evidence, and the drawing of legitimate inferences from the facts are jury

26  functions, not those of a judge, whe[n] he is ruling on a motion for summary judgment."

1   *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986).

2        In this case, there exist disputes of material fact on all of Plaintiff's causes of action,

3   making summary judgment inappropriate.

4       **B.**      **Plaintiff's Claims**

5           1.  *First Cause of Action – Securities Fraud for False Assets and Revenue*

6        Plaintiff alleges that in marketing Fourpoints securities, Defendants falsely represented

7   Fourpoints' assets and revenues, (such as by claiming non-existent revenues from the Pala Signs

8   and rapid growth in California and Arizona), in documents such as the Investment Opportunity,

9   Business Plan, Operational Results/Projection Summary for 2009-2010, and Fourpoints

10  Operational Results 2009.  (Amended Complaint, Dkt. No. 24 at 17.)  In their Motion for

11  Summary Judgment, Defendants seek dismissal of this first cause of action, asserting that: (1) the

12  Pala signs "were always represented as nothing more than a potential future source of revenue"

13  (Dkt. No. 51 at 7); (2) "[t]he projections at issue are undeniably forward-looking representations

14  and, as such, are not actionable except in the most extreme circumstances" due to the PSLRA's

15  safe harbor (*id.*); (3) "Plaintiff cannot show reasonable reliance where it had full access to the

16  books and records, was given . . . accounting of the signs that were actually up and running, and

17  had ample opportunity to test the likelihood of revenue from future Pala Signs through its own

18  due diligence" (*id.* at 9); (4) "Plaintiff knew (or, at the very least, should have known) that the

19  Pala Signs were not existing revenue sources and might not ever be" (*id.* at 10); and (5) "Plaintiff

20  cannot establish scienter" (*id.* at 11).

21       However, Plaintiff's Response establishes disputes of fact with regard to these points,

22  when the evidence is viewed and inferences are made in the light most favorable to Plaintiff.

23       With regard to Defendants' first point, that the Pala Signs were always represented as

24  future contingencies, Plaintiff presents contrary evidence that "Doyle admitted in deposition that

25  he included Pala Sign revenues in the 'Operational Results/ Projection Summary 2009' of

26  October 27th, 2009 which reflected actual revenue results at least through August 2009 [citing

1    Doyle Deposition, Dkt. No. 60-1 at 175 [145?]] . . . even though [Doyle] knew the signs were

2    turned off in June [citing July 10, 2009 Emails, Dkt. No. 60-4] and the lease obligations released

3    in September [citing Doyle Deposition, Dkt. No. 60-1 at 231]."  (Plaintiff's Response, Dkt. No.

4    57 at 12.)  Plaintiff also presents evidence that "$336,000 of monthly Pala Sign revenue is

5    explicitly included in the 'Pro Forma Revenue 2010' given to Somerset."  (*Id.* (citing Somerset

6    PPM, Dkt. No. 52-4 at 1837-40).)

7          With regard to Defendants' second point, that the statements at issue were forward

8    looking statements protected by the PSLRA's safe harbor, Plaintiff presents contrary evidence

9    that the October 2009 Operational Results/ Projection Summary 2009 and the February 2010

10   Operational Results 2009 documents provided to Somerset by Doyle "included *actual* revenue

11   results at least through August 2009," rather than forward looking projections, and were

12   presented to Somerset by the time Defendants allegedly knew that the Pala signs presented no

13   serious revenue prospects.  (Plaintiff's Response, Dkt. No. 57 at 13 (citing Doyle Deposition,

14   Dkt. No. 60-1 at 145; Expert Witness Report of Robert Wagner, Dkt. No. 60-13; and Ex. 6 to

15   Moore Declaration, Dkt. No. 58).)  Further, Plaintiff claims that Defendants did not include any

16   cautionary language or risk disclosures in the October-December 2009 Projections or in the Pro

17   Forma 2010, preventing Defendants from invoking the "bespeaks caution" doctrine/ safe harbor.

18   (Plaintiff's Response, Dkt. No. 57 at 13.)

19         With regard to Defendants' third and fourth points regarding reasonable reliance and

20   Plaintiff's alleged knowledge of the inoperability of the Pala Signs, Plaintiff presents evidence

21   that it reasonably relied upon Defendants' false financial statements in investing $2,028,000 in

22   Fourpoints.  For instance, Somerset's PPM, given to the secondary investors solicited by

23   Somerset, allegedly reflected the revenue numbers supplied by Doyle.  (*See* Plaintiff's Response,

24   Dkt. No. 57 at 14.)  Further, to invoke lack of due diligence as a defense to fraud, Defendants

25   must establish that Somerset "intentionally refused to investigate 'in disregard of a risk known to

26   [it] or so obvious that [it] must be taken to have been aware of it, and so great as to make it

ORDER DENYING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT RE PLAINTIFF'S
SECURITIES FRAUD CLAIMS
PAGE - 7

1   highly probable that harm would follow.'" *Dupuy v. Dupuy,* 551 F.2d 1005, 1020 (5th Cir.

2   1977).  Defendants have not presented undisputed evidence establishing, as a matter of law, any

3   reckless lack of due diligence on the part of Plaintiff.

4          With regard to Defendants' fifth point, that Plaintiff cannot establish scienter, Plaintiff

5   explains that summary judgment may be granted on the issue of scienter only when "there is no

6   rational basis in the record for concluding that any of the challenged statements was made with

7   the requisite scienter." *In re Software Toolworks, Inc.,* 38 F.3d 1078, 1088 (9th Cir. 1994).  This

8   is not true in the instant case, where, Plaintiff alleges, "only two weeks before Doyle gave the

9   'Operational Results/ Projection Summary 2009' to Somerset showing Fourpoints was

10  profitable, he produced a truthful version internally to Fourpoints Investors showing Fourpoints

11  continued to lose money and would lose $1.2 Million by the end of the year."  (Plaintiff's

12  Response, Dkt. No. 57 at 17 (citing Ex. 7 of Goss Declaration, Dkt. No. 60).)

13         In sum, Plaintiff states that "[t]he evidence is undeniable that Defendants never warned

14  Somerset that Fourpoints was continuing to lose money through 2009 in any way that would

15  adequately caution Somerset from relying upon the multi-million dollar profits Defendants

16  projected for 2010."  (Plaintiff's Response, Dkt. No. 57 at 14.)  In the eyes of this Court, Plaintiff

17  has presented sufficient evidence supporting this assertion to preclude summary judgment with

18  regard to Plaintiff's first cause of action.

19             2.  *Second Cause of Action: Omission/ Concealment of Fourpoints' Insolvency*

20         Plaintiff alleges that "[i]n the offer and sale of [Fourpoints] common units to Somerset in

21  interstate commerce, W2W, MacCord and Doyle failed to disclose that at the time of each sale

22  [Fourpoints] did not have sufficient revenue to meet its liabilities, and was essentially insolvent."

23  (Amended Complaint, Dkt. No. 24 at 19.)  Defendants' response is that "Fourpoints was not

24  insolvent" and that even if it was insolvent, this omission was not fraudulent because "Somerset

25  had the opportunity to (and did) independently evaluate Fourpoints' financial condition prior to

26  investing."  (Defendants' Motion, Dkt. No. 51 at 12.)

ORDER DENYING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT RE PLAINTIFF'S
SECURITIES FRAUD CLAIMS
PAGE - 8

1         However, Plaintiff presents evidence sufficient to establish disputes of material fact with

2    regard to both of the above defenses.  With regard to the issue of Fourpoints' objective

3    insolvency, Plaintiff points to Doyle's own December 2010 signed declaration, averring that

4    "existing advertising revenue was not sufficient to maintain the ongoing business," and that

5    Fourpoints "simply did not have a large enough revenue base from its modest sign plant to afford

6    [interest and preferred dividend] payments."  (Plaintiff's Response, Dkt. No. 57 at 21 (citing

7    Doyle Declaration, Dkt. No. 60-3 at 3).)  Additionally, Plaintiff presents evidence indicating that

8    a month before Somerset purchased its first tranche of Fourpoints securities, Fourpoints entered

9    into a forbearance agreement with its existing investors (Fourpoints Investors) because it could

10    not afford its interest payments.  (Plaintiff's Response, Dkt. No. 57 at 21 (citing Forbearance

11    Agreement Letter, Dkt. No. 60-9 at 2).)  Lastly, Plaintiff claims that Fourpoints sold nearly all its

12    assets to Total Outdoor for less than it owed.  (*Id.* (citing Moore Declaration, Dkt. No. 58 at ¶

13    20).)  This evidence creates genuine issues of material fact with regard to Fourpoints' actual,

14    objective insolvency.

15         Plaintiff also presents challenges to Defendants' claim that Somerset was at fault for

16    failing to discover any objective insolvency during its due diligence.  As Plaintiff explains, and

17    as is highly relevant to all of Plaintiff's omission-based causes of action, <u>Rule 10b-5 obligates</u>

18    <u>Defendants to disclose information when such information is necessary "to make . . . statements</u>

19    <u>made, in the light of the circumstances under which they were made, not misleading."</u> *Matrixx*

20    *Initiatives, Inc. v. Siracusano*, 131 S. Ct. 1309, 1321 (2011) (citing 17 C.F.R. § 240.10b-5(b)).

21    Thus, "when Defendants have reported that Fourpoints is profitable, they have an affirmative

22    duty to disclose that it cannot pay its debts, and they cannot shift the burden to Somerset to

23    divine Fourpoints' dire condition."  (Plaintiff's Response, Dkt. No. 57 at 22.)

24         The Court finds these arguments preclude Defendants from securing judgment on this

25    second cause of action at this stage.

26         3.  *Third Cause of Action- Securities Fraud for False Percentage of Units*

1    In the Amended Complaint, Plaintiff alleged that MacCord and Doyle fraudulently

2   misled Somerset as to the percentage of Fourpoints shares it was purchasing.  (Amended

3   Complaint, Dkt. No. 24 at 19-20.)  However, "Somerset withdraws its 3rd Cause of Action for

4   misrepresentation of the percentage of ownership resulting from Somerset's purchase of

5   Fourpoints units."  (Plaintiff's Response, Dkt. No. 57 at 2 n.1.)  Hence, the Court dismisses this

6   Third Cause of Action, mooting Defendants' summary judgment arguments on this point.

7                4.   *Fourth Cause of Action – Omission of Sale of Shares by Lubin Outdoor*

8    Plaintiff claims that "[i]n the offer and sale of [Fourpoints] common units to Somerset in

9   interstate commerce, W2W, MacCord and Doyle failed to disclose that at the same time [as

10   Somerset was purchasing these shares,] Lubin Outdoor was reducing its interest in [Fourpoints]

11   by selling common units of [Fourpoints] to MacCord and W2W at a valuation nearly 40% lower

12   than [] offered [to] Somerset by W2W, MacCord and Doyle" which was "critical information

13   material to Somerset's decision to purchase common units of [Fourpoints] from W2W,

14   MacCord, and Doyle."  (Amended Complaint, Dkt. No. 24, at 20-21.)  Defendants request

15   summary judgment on this cause of action because "Plaintiff can point to no authority requiring

16   a securities seller to inform the buyer as to what *other* owners may or may not be doing with

17   their interests."  (Defendants' Motion, Dkt. No. 51 at 14.)

18    However, Defendants do concede that there is an affirmative duty to speak under

19   Washington law, at such times when the facts "are so vital and material to a transaction that if

20   known by one party and not the other, the agreement would be voidable" (*id.* at 15 (citing *Kaas*

21   *v. Privette,* 12 Wash. App. 142, 149 (1974))), and under federal law, when information is

22   required to "make the statement made, in light of the circumstances under which they were

23   made, not misleading" (*id.* (citing 17 C.F.R. § 240.10b-5)).

24    Plaintiff has presented evidence sufficient for the Court to conclude that there is at least a

25   material issue of fact with regard to whether such an affirmative duty to speak existed with

26   regard to the sale of shares by Lubin Outdoor.  For instance, Plaintiff states that by providing the

ORDER DENYING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT RE PLAINTIFF'S
SECURITIES FRAUD CLAIMS
PAGE - 10

1    Investment Opportunity and Business Plan Overview "to Somerset identifying Lubin Outdoor as

2    one of only three owners and investors in Fourpoints with a 10% stake, Defendants assumed the

3    affirmative duty to disclose to Somerset that Lubin Outdoor was reducing its ownership."

4    (Plaintiff's Response, Dkt. No. 57 at 22.)  Such a claim is not without merit, given the 10b-5

5    omission standard that Defendants themselves concede.  *See Matrixx*, 131 S. Ct. at 1321.

6    Further, Plaintiff has established materiality of this omission sufficient to preclude summary

7    judgment – "divesting by one of three owners when Fourpoints is supposedly profitable and

8    projected to generate multi-million dollar profits in the next year raises significant questions

9    about the reliability of Defendants' financial statements." (Plaintiff's Response, Dkt. No. 57 at

10   22.)  Additionally, Plaintiff alleges, "that Lubin Outdoor was selling at a third lower price only

11   heightens the doubt of Defendants' financial projections." (*Id.*)  In light of these arguments, the

12   Court cannot grant summary judgment to Defendants on this cause of action.

13                  5.   *Fifth Cause of Action – Omission of Forbearance Agreement*

14          Plaintiff alleges that in the offer and sale of Fourpoints units to Somerset, "W2W,

15   MacCord and Doyle failed to disclose that [Fourpoints] was operating under a forbearance

16   agreement deferring its interest and distribution payments to FP Investors." (Amended

17   Complaint, Dkt. No. 24 at 21.)  Defendants argue that this "claim is baseless, however, because

18   (i) Somerset knew of DH Capital's loan to Fourpoints, (ii) Defendants did not misstate anything

19   (and had no affirmative duty to speak if not asked), and (iii) the fact of the forbearance of a

20   known debt is immaterial because, if anything, it's good news to future investors." (Defendants'

21   Motion, Dkt. No. 51 at 16.)  However, Plaintiff responds with facts and arguments of law that

22   demonstrate genuine disputes with regard to these defenses.

23          Defendants' first point, that Somerset knew of DH Capital's loan to Fourpoints, is

24   immaterial because it is Somerset's knowledge of Fourpoints' *forbearance* of said loan that is

25   material.  And Plaintiff has supplied the Court with evidence sufficient to create a dispute of fact

26   as to whether Somerset had knowledge of the forbearance agreement.  As Plaintiff states,

ORDER DENYING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT RE PLAINTIFF'S
SECURITIES FRAUD CLAIMS
PAGE - 11

1  "Defendants misrepresent the Fourpoints Projection Summary 2010.  While the document does

2  list two $220,000 interest payments to Fourpoints Investors, it does not state that Fourpoints

3  cannot or will not make these payments.  Defendants cannot identify one document actually

4  supporting disclosure [of the forbearance agreement], because there are none.  The forbearance

5  agreement was never disclosed to Somerset."  (Plaintiff's Response, Dkt. No. 57 at 22-23 (citing

6  December 3, 2009 Email, Dkt. No. 52-11; Moore Declaration, Dkt. No. 58 at ¶16).)

7        As to Defendants' second and third points, Plaintiff explains that "[w]hen Defendants

8  provided financial statements to Somerset stating that Fourpoints was profitable, they assumed

9  the affirmative duty to disclose that Fourpoints could not make its debt payments and entered the

10  forbearance agreement."  (*Id.* (citing 17 C.F.R. § 240.10b-5; *Matrixx*, 131 S. Ct. at 1321).)  The

11  Court finds sufficient support in the record and governing case law to deny summary judgment

12  on this cause of action.

13                6.  *Sixth Cause of Action- Securities Fraud for Forgery*

14        The last of Plaintiff's causes of action on which Defendants seek summary judgment is

15  Somerset's allegation that in the offer and sale of Fourpoints shares to Somerset, "W2W,

16  MacCord, and/or Doyle forged the signatures on consents to the Assignment of Units agreements

17  between W2W and Somerset."  (Amended Complaint, Dkt. No. 24 at 22.)  Somerset claims that

18  after purchasing the last of the Fourpoints units from W2W, William Moore received a letter

19  from the Fourpoints Board (after MacCord was terminated) informing Plaintiff that the other

20  owners of Fourpoints shares had not consented to the assignment of W2W's Fourpoints shares to

21  Somerset, as was required by the operating agreement binding on W2W, DH Capital, and Lubin

22  Outdoor.  (Moore Declaration, Dkt. No. 58 at ¶15 (citing Dec. 16, 2010 letter and Dec. 19, 2010

23  email, Moore Declaration, Dkt. No. 58-7).) This, Plaintiff claims, rendered the shares it held

24  "null and void" and left Somerset with nothing after its $2,028,000 investment.  (*Id.*)

25        Defendants respond by arguing that they "(i) had the requisite consents, and (ii) even if

26  this allegation is true . . . Somerset lacks standing to pursue this claim, because they cannot show

1    any damages." (Defendants' Motion, Dkt. No. 51 at 18.)

2         However, Plaintiff offers external evidence that calls into question Defendants'

3    possession of the requisite consents.  As Plaintiff states in the Response, "Fourpoints Investors

4    unequivocally states that it never had knowledge of or consented to any sales of Fourpoints units

5    from December 2009 through August 2010 (the Somerset purchases), and that MacCord used

6    consents from prior approved sales." (Plaintiff's Response, Dkt. No. 57 at 18 (citing Declaration

7    of Martin Friedman, Dkt. No. 60-11 at 8).) Plaintiff adds that "MacCord declared this was true

8    under penalty of perjury in the prior litigation with Fourpoints." (*Id.* (citing Declaration of

9    Donald MacCord, Dkt. No. 60-2 at 8).)

10        Further, Plaintiff points out that Defendants' lack of damages argument is unavailing

11   because "[b]ut for the forged consents, Somerset would have received valid Fourpoints units.

12   That the Assignments of Units lacked consent made them null and void and therefore, worthless.

13   . . . Defendants' claim that Somerset was not injured when the $2,028,000 that Somerset invested

14   bought nothing is preposterous." (Plaintiff's Response, Dkt. No. 57 at 19.)

15        In light of this evidence, summary judgment on the forgery claim is inappropriate.

16   **III.   CONCLUSION**

17        For the foregoing reasons, Defendants' Motion for Summary Judgment (Dkt. No. 51) is

18   DENIED.

19        DATED this 18th day of May 2015.

20

21

22

23

24   _____

25   John C. Coughenour

26   UNITED STATES DISTRICT JUDGE

ORDER DENYING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT RE PLAINTIFF'S
SECURITIES FRAUD CLAIMS
PAGE - 13