The Honorable John C. Coughenour
Noted for Hearing July 11, 2014

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| Somerset Communications Group, LLC,<br><br>                              Plaintiff,<br><br>v.<br><br>Wall to Wall Advertising, Inc., et al.,<br><br>                              Defendants. | NO.  2:13 cv 02084  JCC<br><br>GOSS DECLARATION OPPOSING DEFENDANTS' MOTIONS IN LIMINE |

C. Chip Goss declares:

1. The following are true and correct excerpts taken from the transcript of the videotape deposition of Peter Hopper in lieu of trial testimony:

```
MR. WILLIAMS:
   04     Q.   Okay.  In 2010 you filed a lawsuit
   05  against Mr. MacCord; is that correct?
   06     A.   Yep.
    . . .
   13          That lawsuit was settled, wasn't
   14  it?
   15     A.   We did reach a settlement with
   16  Mr. MacCord that he hasn't fully honored, but
   17  yes.
    . . .
                                           57
   06     Q.   I'm handing you what will be
   07  marked as Deposition Exhibit 4.
```

Goss Declaration Opposing
Defendants' Motions in Limine - 1 of 5

TACEY GOSS P.S.
330 112th Avenue NE, Suite 301
Bellevue, WA  98004
Office 425.489.2878  -  Facsimile 425.489.2872
WWW.TACEYGOSS.COM

```
         . . .
23          It says, "As consideration for the
24   terms of the settlement set forth herein, the
25   MacCord party shall pay to the Fourpoints
                        58
02   parties $95,349.13."
03       A.   Uh-huh.
04       Q.   Does this refresh your
05   recollection that the ultimate settlement
06   payment was $95,000?
         . . .
16       Q.   As part of the settlement
17   agreement did Fourpoints agree to release all
18   claims against Mr. MacCord?
19       A.   Again, you'll have to really ask
20   Mr. Friedman.  I'd need to read the agreement.
21       Q.   So you don't recall either way?
22       A.   I think we reached a settlement,
23   so I'm assuming we released each other.
```

After Defense counsel raised the line of questioning, Somerset asked the following:

   MR. GOSS

```
                        88
22       Q.   -- was it your opinion and the
23   opinion of Fourpoints Investors that
24   mismanagement by Mr. MacCord and Mr. Doyle was a
25   significant factor in the failure of the company
                        89
02   to perform in 2009?
03           MR. WILLIAMS:  Object to the form.
04       A.   Yes.
05       Q.   And could you elaborate on what
06   you believed the mismanagement or malfeasance to
07   be?
08       A.   Yeah.  You said five minutes.
09       Q.   All right, in a minute.
10   Mr. Friedman can probably go into detail.
11       A.   Yeah, I mean, I'll -- I'll touch
12   on some key things.
13           So it is our belief, with lots of
14   documentation that we believe supports our
15   contention, that a large amount of the money
16   that was invested in the company by Fourpoints
```

Goss Declaration Opposing
Defendants' Motions in Limine - 2 of 5

TACEY GOSS P.S.
330 112th Avenue NE, Suite 301
Bellevue, WA  98004
Office 425.489.2878  -  Facsimile 425.489.2872
WWW.TACEYGOSS.COM

17  Investors was used by MacCord for personal --
18  personal use.  Whether those were very
19  significant charges to an American Express card
20  that was a corporate card that were clearly
21  personal; whether it was monies paid to AJA
22  Media, which we later learned was a company
23  owned by Andrea MacCord's former husband that
24  apparently Andrea and Don had a significant
25  economic stake in, so there were inflated bills,
                            90
02  you know, payments for work that never occurred,
03  you know.  So, you know, a large amount of
04  money.  There was, you know, a Bentley that the
05  company, you know, bought for Don, a Bentley.
06          So there were all sorts of things
07  like this where, you know, just -- just a lot of
08  money got used for purposes that had nothing to
09  do with building the business.
10          There were a number of
11  misrepresentations to us over time about, you
12  know, whether a -- an advertiser was actually a
13  real advertiser.  There were -- there were
14  invoices that were created that we later learned
15  were clearly not real, but it served to allow
16  the financial statement to show that we had
17  revenue.  Later on, you know, tons of that was
18  written off and deemed to be, you know,
19  uncollectible and not really valid to begin
20  with.  The whole Pala situation, where we were
21  led to believe that everything was good to go on
22  the sign.  You know, the sign went up, you know,
23  had to be taken down, and we were never told of
24  this, but yet we were continuing to look at
25  projections with the company that showed the
                            91
02  sign generating lots of revenue.
03          I mean, again, it would be -- we
04  could go on for a long time here.  But, yes,
05  mismanagement, misappropriation of funds, you
06  know, in my opinion was the principal reason the
07  company failed.
08          MR. WILLIAMS:  Object to the
09      answer and move to strike as beyond the
10      scope of discovery and the subject of a
11      motion in limine.

Goss Declaration Opposing
Defendants' Motions in Limine - 3 of 5

TACEY GOSS P.S.
330 112th Avenue NE, Suite 301
Bellevue, WA  98004
Office 425.489.2878  -  Facsimile 425.489.2872
WWW.TACEYGOSS.COM

12    Q.  Why did Fourpoints Investors
13 choose to settle for $95,000 its claims?
14    A.  You know, it was just at that
15 point in time we felt like the continued expense
16 of pursuing an action against -- against Don and
17 Shannon relative to what, you know, we were
18 likely going to be able to recover, it just
19 didn't make sense to keep pursuing it.
20    Q.  Did you settle in any way because
21 you believed you could not prove your claims?
22    A.  No.

2. The following are true and correct excerpts taken from the transcript of the videotape deposition of Martin Friedman in lieu of trial testimony:

MR. WILLIAMS
60
20    Q.  Mr. Friedman, Fourpoints sued
21 Donald MacCord and Wall To Wall in or around
22 2010, correct?
23    A.  Originally, yes, it did, in 2010.
24    Q.  And you discussed some of those
25 allegations today here with counsel for
61
02 Plaintiffs. Do you recall that?
03    A.  Yes, I do.
04    Q.  Mr. Friedman, were any of those
05 allegations proven at trial?
06    A.  No, they were not.
07    Q.  Why is that?
08    A.  We never went to trial.
09    Q.  How did the parties resolve the
10 claim?
11    A.  In mid 2000 and -- let me get my
12 dates right -- '12, we decided that it would be
13 in the best interest of Fourpoints Holdings and
14 Fourpoints Investors at that point to settle
15 with him, to allow us to sell the assets of the
16 company.
17    Q.  And was there a monetary payment
18 by Mr. MacCord to Fourpoints as a condition of
19 that settlement agreement?
20    A.  Under the settlement agreement the
21 defendant parties, MacCord, Doyle, Doyle's

Goss Declaration Opposing
Defendants' Motions in Limine - 4 of 5

TACEY GOSS P.S.
330 112th Avenue NE, Suite 301
Bellevue, WA  98004
Office 425.489.2878  -  Facsimile 425.489.2872
WWW.TACEYGOSS.COM

```
22  accounting firm and their spouses, I guess, were
23  required to make to make a monetary payment,
24  yes.
25      Q.   Do you recall what that monetary
```

                                    62

```
02  payment was?
03       A.   The initial monetary payment was
04  supposed to be around $90,000.  It was a little
05  less than that, actually.  When they did not
06  make the payment by the date that it was due,
07  which was in July of 2012, it stepped up
08  immediately to $121,000 and then it was -- it
09  accrues interest at a rate of 10 percent.
10      Q.   And as a term of that settlement
11  agreement between the MacCord parties and
12  Fourpoints, the parties agreed to mutually
13  release each other, correct?
14       A.   That's correct.
15      Q.   And that mutual release extended
16  to all of the allegations by Fourpoints in that
17  lawsuit, correct?
```

The foregoing is true and correct under penalty of perjury of the laws of the state of Washington.

Signed in Bellevue, Washington this 21st day of January, 2016.

TACEY GOSS P.S.

**/S/** C. Chip Goss

_____
C. Chip Goss         WSBA #22112
Attorney for Plaintiff Somerset
330 112th Ave NE, Suite 301
Bellevue, WA  98004
425.489.2878
Chip@TaceyGoss.com

Goss Declaration Opposing
Defendants' Motions in Limine - 5 of 5

TACEY GOSS P.S.
330 112th Avenue NE, Suite 301
Bellevue, WA  98004
Office 425.489.2878  -  Facsimile 425.489.2872
WWW.TACEYGOSS.COM